# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01743-SCT

*NAOMI RUTH McDONALD AND JANELLA
LAVETTE McDONALD*

*v.*

*MEMORIAL HOSPITAL AT GULFPORT AND DR.
JUAN CARLOS TERAN-BENITEZ*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2007 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | F. GERALD MAPLES |
| ATTORNEYS FOR APPELLEES: | SHELLYE VINES McDONALD |
| | WILLIAM E. WHITFIELD, III |
| | KIMBERLY S. ROSETTI |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 04/30/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2007-CA-02169-SCT

*NAOMI   RUTH   McDONALD   AND   JANELLA
LAVETTE McDONALD*

*v.*

*MEMORIAL HOSPITAL AT GULFPORT AND DR.
JUAN CARLOS TERAN-BENITEZ*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2007 |
| TRIAL JUDGE: | STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | F. GERALD MAPLES |

ATTORNEYS FOR APPELLEES:        SHELLYE VINES McDONALD
                                WILLIAM E. WHITFIELD, III
                                KIMBERLY S. ROSETTI
NATURE OF THE CASE:             CIVIL - WRONGFUL DEATH
DISPOSITION:                    AFFIRMED - 04/30/2009
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Naomi Ruth McDonald filed this wrongful-death/medical-malpractice action against several medical providers arising out of the treatment and care of her husband, Janella Lavette McDonald.  Defendant Memorial Hospital at Gulfport filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment, asserting that McDonald's claims were time-barred under the Mississippi Tort Claims Act. Defendants Dr. Juan C. Teran-Benitez and Gastroenterology Center, P.A., filed a Motion to Strike Expert Witnesses of Plaintiff and for Summary Judgment.  The Circuit Court for the First Judicial District of Harrison County ultimately granted both motions, thus dismissing these defendants from the suit.  Aggrieved, McDonald appealed both final judgments, properly certified pursuant to Mississippi Rule of Civil Procedure 54(b), and this Court consolidated the appeals.  Finding no error, we affirm.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.    On March 7, 2003, Janella Lavette McDonald (Mr. McDonald) was admitted to Memorial Hospital at Gulfport (MHG) by Dr. David LaRosa for treatment of pneumonia. Dr. Frederick Pakron was consulted, and on March 14, 2003, Mr. McDonald was discharged from MHG, and Dr. Pakron took over Mr. McDonald's care, admitting him to Select

2

Specialty Hospital (SSH). SSH is a long-term, acute-care hospital located on the fifth floor of MHG.

¶3. On March 24, 2003, while still a patient at SSH, Mr. McDonald experienced nausea and vomiting of brown material or blood, and Dr. Juan C. Teran-Benitez (Dr. Teran-Benitez) was consulted. Dr. Teran-Benitez ordered an endoscopic procedure, and Mr. McDonald was sent to the endoscopy suite at MHG, where Dr. Teran-Benitez attempted to perform an esophagogastroduodenoscopy (EGD). Foreign or coffee-ground-appearing material was encountered upon insertion of the scope. Due to Mr. McDonald's Do-Not-Resuscitate (DNR) status as noted on his chart, Dr. Teran-Benitez and members of the lab staff consulted Mr. McDonald's wife, Naomi Ruth McDonald, regarding the insertion of an endotracheal tube to protect Mr. McDonald's airway. Mrs. McDonald refused, and Mr. McDonald expired in the endoscopy lab on March 24, 2003.

¶4. Naomi Ruth McDonald (McDonald), as widow of Janella Lavette McDonald, deceased, and as personal representative of statutory heirs, originally filed this wrongful-death and medical-malpractice action on June 9, 2004. Subsequent amended complaints also were filed, and in the end, several medical providers were named as defendants. McDonald gave previous notice of her claim to MHG on March 22, 2004, pursuant to the Mississippi Tort Claims Act, more specifically, Mississippi Code Annotated Section 11-46-11(1) (Rev. 2002).

¶5. On July 25, 2005, McDonald designated as experts Dr. Rodrigo Galvez, Dr. George Nichols, and Judith Kidd, a registered nurse. On December 9, 2005, Dr. Teran-Benitez and Gastroenterology Center, P.A., filed their Motion to Strike Expert Witnesses of Plaintiff and

3

for Summary Judgment, asserting that Dr. Galvez and Dr. Nichols were not qualified to offer opinions regarding the standard of care for a gastroenterologist. Also on December 9, 2005, MHG filed its Motion to Dismiss or in the Alternative Motion for Summary Judgment, stating that McDonald did not substantially comply with Mississippi Code Section 11-46-11(3). The Circuit Court for the First Judicial District of Harrison County, Judge Stephen B. Simpson presiding, conducted a hearing on the aforementioned motions. The trial court subsequently granted summary judgment in favor of Dr. Teran-Benitez and Gastroenterology Center, P.A., and MHG, and entered final judgments consistent with the grant of summary judgment.

¶6. More specifically, as to Dr. Teran-Benitez and Gastroenterology Center, P.A., Judge Simpson entered a judgment of dismissal which stated, *inter alia*, that the judgment was entered pursuant to the provisions of Mississippi Rule of Civil Procedure 54(a), and that, pursuant to the provisions of Mississippi Rule of Civil Procedure 54(b), the final judgment should be entered as to Dr. Teran-Benitez and Gastroenterology Center, P.A., "as there is no just reason for delay." As to MHG, Judge Simpson entered a judgment of dismissal which stated, *inter alia*, that MHG's "[m]otion to [d]ismiss or in the alternative for [s]ummary [j]udgment is granted and final judgment is hereby entered, as there is no just reason for delay."

¶7. From these final judgments entered in favor of Dr. Teran-Benitez, Gastroenterology Center, P.A., and MHG, and properly certified pursuant to Mississippi Rule of Civil Procedure 54(b), McDonald appealed to us asserting two issues: (1) whether the trial court erred in dismissing the plaintiffs' claims against MHG based on the one-year statute of

4

limitations set forth in Mississippi Code Section 11-46-11(3); and (2) whether the trial court erred in ruling the plaintiffs' expert witnesses were not qualified to testify regarding the standard of care applicable to Dr. Teran-Benitez, and in consequently granting the motion for summary judgment, entering a judgment of dismissal in favor of Dr. Teran-Benitez and Gastroenterology Center, P.A.

**DISCUSSION**

¶8.     This Court's well-established standard of review in reviewing a trial court's grant or denial of summary judgment is *de novo*. ***One South, Inc. v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007) (*citing* ***Hubbard v. Wansley***, 954 So. 2d 951, 956 (Miss. 2007)). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). "We will not reverse the trial court's decision unless it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party." ***Moore v. Mem'l Hosp.***, 825 So. 2d 658, 663 (Miss. 2002) (*citing* ***Robinson v. Singing River Hosp. Sys.***, 732 So. 2d 204, 207 (Miss. 1999)). However, "[a]bsent an abuse of discretion, a judge's determination as to the qualifications of an expert witness will remain undisturbed on appeal." ***Hubbard v. Wansley,*** 954 So. 2d 951, 956 (Miss. 2007) (*citing* ***Palmer v. Biloxi Reg'l Med. Ctr.***, 564 So. 2d 1346, 1357 (Miss. 1990) (citation omitted)). This Court stated:

> The law empowers a trial judge to determine whether a proffered expert is
> qualified to testify and does not restrict exercise of this power to the trial stage
> only. That is, a judge has as much power to resolve doubts on qualifications

5

of proffered experts during the summary judgment stage as he has during the trial stage. And of course, the standard which this Court must apply when reviewing a trial judge's decision to disqualify remains unchanged – notwithstanding that the decision was made during the summary judgment stage. That is, this Court will determine whether the trial judge abused his discretion.

*Id.*

I.      **WHETHER THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S CLAIMS AGAINST DEFENDANT MEMORIAL HOSPITAL AT GULFPORT BASED ON THE ONE-YEAR STATUTE OF LIMITATIONS SET FORTH IN MISSISSIPPI CODE SECTION 11-46-11(3).**

¶9.     The trial court granted MHG's Motion to Dismiss or in the Alternative Motion for Summary Judgment; thus, dismissing the action against MHG as time-barred pursuant to Mississippi Code Section 11-46-11(3), which states in part:

> All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim, or for one hundred twenty (120) days from the date the chief executive officer or other statutorily designated official of a municipality, county or other political subdivision receives the notice of claim . . . .

Miss. Code Ann. § 11-46-11(3) (Rev. 2002).  The trial court determined that "any negligence for which MHG would be liable had to have occurred on or before March 14, 2003," the date on which Mr. McDonald was discharged from MHG and admitted to SSH.  The trial court ruled that since MHG did not receive notice of the claim until March 22, 2004, a little more than one year after Mr. McDonald's discharge from MHG, the action was barred by the statute of limitations.

6

¶10. However, since the trial court did not address the discovery rule with respect to section 11-46-11(3), we must do so today for the sake of clarity. This Court has held that a discovery rule applies to claims under the Mississippi Tort Claims Act (MTCA). *See Caves v. Yarbrough*, 991 So. 2d 142, 154 (Miss. 2008) ("we therefore shall continue to recognize a discovery rule with respect to Section 11-46-11(3)"). In *Caves*, decided after the trial judge's entry of judgments in today's case, this Court stated:

> We hold today that the MTCA's one-year statute of limitations begins to run when the claimant knows, or by exercise of reasonable diligence should know, of both the damage or injury, and the act or omission which proximately caused it. We further hold that the finder of fact (in this case, the trial judge) must decide when those requirements are satisfied.

*Caves*, 991 So. 2d at 155. Therefore, when analyzing claims under the MTCA one-year statute of limitations, trial courts must employ the discovery rule. When applying this rule to the facts of the case *sub judice*, it is evident that McDonald complied with the one-year statute of limitations. McDonald assuredly had no way of knowing "of both the damage or injury, and the act or omission which proximately caused it" until at least March 24, 2003, when her husband vomited blood and eventually died later that day. *Id.* McDonald submitted the statutory notice to MHG on March 22, 2004; so, even assuming *arguendo* that she discovered an actionable injury on March 24, 2003, McDonald complied with the one-year statute of limitations imposed by Section 11-46-11(3). Thus, the trial court erred in ruling that McDonald's claims were barred based on the statute of limitations.

¶11. However, the trial court correctly determined that "[w]ithout a genuine issue of material fact as to causation established by experts plaintiff cannot survive summary judgment." McDonald designated three experts: Judith Kidd, Dr. Galvez, and Dr. Nichols.

7

As addressed by the trial court, Nurse Judith Kidd testified via deposition to alleged breaches of nursing standards of care and their application to Mr. McDonald's treatment while a patient at MHG, but she failed to address causation. In her deposition testimony, Nurse Kidd (a registered nurse certified as a medical/surgical nurse and as a gerontological nurse) stated "I don't speak to medical causation," acknowledging that she was not competent to testify as to medical causation. The two other experts, Dr. Galvez and Dr. Nichols, did not offer testimony regarding any alleged breach by MHG.

¶12.    In order to establish a prima facie case of medical negligence, McDonald must prove "that (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and; (4) the plaintiff was injured as a result." ***Delta Reg'l Med. Ctr. v. Venton***, 964 So. 2d 500, 504 (Miss. 2007) (*citing* ***Burnham v. Tabb***, 508 So. 2d 1072, 1074 (Miss. 1987)). As a general rule, expert testimony must be used in proving these elements. "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." ***Barner v. Gorman***, 605 So. 2d 805, 809 (Miss. 1992) (*citing* ***Latham v. Hayes***, 495 So. 2d 453 (Miss. 1986)). Although McDonald offered evidence regarding breach of duty, she failed to produce any expert testimony that MHG or its agents were the cause of Mr. McDonald's injuries or death. As a result, the trial judge did not err in finding that there was no genuine issue of material fact

as to causation, and the trial court thus properly granted summary judgment in favor of MHG.

¶13.    We thus find this issue to be without merit.

> **II.    WHETHER THE TRIAL COURT ERRED IN RULING PLAINTIFF'S EXPERT WITNESSES UNQUALIFIED TO TESTIFY REGARDING THE STANDARD OF CARE APPLICABLE TO DR. TERAN-BENITEZ, AND CONSEQUENTLY GRANTING DR. TERAN-BENITEZ'S MOTION FOR SUMMARY JUDGMENT.**

¶14.    McDonald argues that the trial court misapplied Mississippi Rule of Evidence 702 in granting the Motion to Strike Expert Witnesses of Plaintiff and for Summary Judgment filed by Dr. Teran-Benitez and Gastroenterology Center, P.A.  Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid. 702.

¶15.    Expert testimony should only be admitted if it withstands the two-prong inquiry under Rule 702.  "First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education.  Second, the witness's scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue." ***Miss. Transp. Comm'n v. McLemore***, 863 So. 2d 31, 35 (Miss. 2003) (*citing* Miss. R. Evid. 702) (citation omitted).  Generally, it is not required that an expert in a medical-malpractice case be of the same specialty as the doctor about whom the expert is testifying. ***Hubbard***, 954 So.

9

2d at 957 (Miss. 2007).[1]  "It is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." ***Id.*** (*quoting **West v. Sanders Clinic for Women, P.A.***, 661 So. 2d 714, 719 (Miss. 1995)). However, the expert still must show satisfactory familiarity with the specialty of the defendant doctor in order to testify as to the standard of care owed to the patient. ***Id.*** (*citing **West***, 661 So. 2d at 718-19).

¶16.    McDonald designated Dr. Rodrigo Galvez and Dr. George Nichols to offer testimony regarding the standard of care applicable to Dr. Teran-Benitez.  In ruling on the motion, the trial court determined that the "[p]laintiffs have offered no evidence that either of their experts have any familiarity with the standard of care applicable to Dr. Teran, a gastroenterologist." Dr. Galvez, a board-certified pathologist and psychiatrist, has practiced pathology since 1968 and both pathology and psychiatry since 1981.  He has never practiced in the field of gastroenterology, and since medical school has not performed any procedures in this field other than one colonoscopy in 1976.  Further, Dr. Galvez has never admitted a patient to an acute-care facility other than a psychiatric facility, and he has not performed an EGD, the procedure Mr. McDonald was undergoing, since medical school in the 1960s.  He last intubated a patient in 1963.  Dr. Galvez also has never been involved in a procedure with a DNR patient, where consent from a family member was necessary to take action to save the patient's life.

---

[1]With all due respect, we disagree with the separate opinion's interpretation of ***Hubbard***.

10

¶17. In order to testify, Dr. Galvez, while not required to be a gastroenterologist, had to at least be familiar with the standard of care to which a gastroenterologist is held. *See **Troupe v. McAuley**,* 955 So. 2d 848, 856-57 (Miss. 2007). Based on Dr. Galvez's deposition testimony and curriculum vitae, the trial court found that Dr. Galvez was not familiar with the proper standard of care and had not exercised the same level of intellectual rigor that characterizes the practice of an expert in the field of gastroenterology. ***Poole v. Avara***, 908 So. 2d 716, 724 (Miss. 2005) (*citing **McLemore***, 863 So. 2d at 37-38).

¶18. Regarding the standard of care applicable to Dr. Teran-Benitez, Dr. Nichols, a pathologist, testified in his deposition that he (Dr. Nichols) had never treated a patient in Mr. McDonald's situation. Dr. Nichols also admitted that "I have never written DNR orders or been involved in those discussions about anyone other than my own relatives." McDonald presented no evidence that Dr. Nichols was familiar with the standard of care attributable to gastroenterologists. When questioned about his standard-of-care testimony, Dr. Nichols responded that he was not really there to offer standard-of-care testimony "other than standard of care for a proven practicing physician" . . . "a plain M.D." Dr. Nichols offered no testimony that he was competent to testify to the standard of care of a gastroenterologist. As this Court stated in ***Hubbard***, "[i]t is illogical to allow a proposed expert to testify as to the standard of care of a specialty with which he has demonstrated no familiarity." ***Hubbard***, 954 So. 2d at 958.

¶19. The trial court did not abuse its discretion in granting the Motion to Strike Expert Witnesses of Plaintiff filed by Dr. Teran-Benitez and Gastroenterology Center, P.A. The trial court committed no error in ruling that the "experts offered no testimony that convinces

this Court that either of them is competent to testify as to that standard of care." Thus, the trial court did not err in granting summary judgment. As previously discussed, as a general rule, expert testimony must be used in proving the elements of medical negligence. Absent expert testimony, there is no triable issue of fact with regard to the alleged medical negligence of Dr. Teran-Benitez. *See Palmer v. Biloxi Reg'l Med. Ctr.*, 564 So. 2d 1346 (Miss. 1990).

¶20.    This issue is without merit.

## CONCLUSION

¶21.    For the reasons stated, the final judgments of dismissal entered in favor of Memorial Hospital at Gulfport, Dr. Juan Carlos Teran-Benitez, and Gastroenterology Center, P.A., by the Circuit Court for the First Judicial District of Harrison County are affirmed.

¶22.    **AFFIRMED.**

**WALLER, C.J., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶23.    I agree with the majority's analysis regarding Memorial Hospital at Gulfport, insofar as today's decision holds that McDonald's case is not time-barred by virtue of the discovery rule but that the plaintiff offered no evidence of causation against MHG. However, I find fault with the majority's analysis concerning expert witnesses, and therefore, I dissent from the determination that the plaintiff failed to offer qualified experts.

¶24. It is undisputed that, generally speaking, Mississippi law requires medical-malpractice plaintiffs to use expert witnesses to "identify and articulate the requisite standard that was not complied with . . . [and] also [to] establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." ***Barner v. Gorman***, 605 So. 2d 805, 809 (Miss. 1992). The use of expert witnesses in Mississippi courtrooms is governed by Mississippi Rule of Evidence 702, which defines an expert as one "qualified . . . by knowledge, skill, experience, training, or education" who may impart that expertise "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Miss. R. Evid. 702. Rule 702 serves only to distinguish fact witnesses from witnesses with some degree of specialized knowledge who may provide assistance to jurors in their labors as finders of fact. The rule serves to separate witnesses possessed of relevant factual information from those who, because of special knowledge about a particular subject are, for evidentiary purposes, deemed experts and are allowed to give opinions.

¶25. The courts of this state and others acknowledge this principle through the recognition that a plaintiff's medical-expert witness need not be "of the same specialty as the doctor about whom the expert is testifying," ***Hubbard v. Wansley***, 954 So. 2d 951, 957 (Miss. 2007), because "[i]t is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." ***Id.*** (quoting ***West v. Sanders Clinic for Women, P.A.***, 661 So. 2d 714, 719 (Miss. 1995)). Rule 702 is broadly constructed and broadly construed. It "seeks to *encourage* the use of expert testimony in non-opinion form when counsel believes the trier can draw the requisite inference." Miss. R.

13

Evid. 702 cmt. (emphasis added). It does not purport to restrict expert testimony to the domain of a tiny class of geniuses, but merely to differentiate between experts and laypersons. Rule 702 sets a "low threshold for competency" in favor of courts' "preference for leaving matters of credibility to the judgment of the jury . . . ." *State v. Calliham*, 2002 UT 86, ¶ 27, 55 P.3d 573, 583 (Utah 2002).

¶26.    Despite such traditionally broad treatment, in recent years, this Court consistently has tightened the requirements for expert testimony in medical-malpractice cases. *See Hubbard*, 954 So. 2d at 966-67 (Diaz, J., dissenting). In 1987, for example, the Court followed the consensus approach, quoting the third edition of McCormick on Evidence, by holding that although expert testimony was required, "a specialist in a particular branch within a profession will not be required." *Brown v. Mladineo*, 504 So. 2d 1201, 1202 (Miss. 1987). Today, the national consensus remains broadly permissive of expert testimony; a party seeking to admit expert testimony need only demonstrate "that the witness has sufficient skill or knowledge related to the pertinent field or calling that his inference will *probably* aid the trier in the search for truth." McCormick on Evidence § 13 (Kenneth S. Broun ed., 6th ed. 2006) (emphasis added). As recently as 2002, Mississippi courts treated Rule 702 broadly enough to permit "a physician in one specialty [to] testify as to the standard of care in another specialty, provided he is familiar with the standards of that other specialty." Robert A. Weems & Robert M. Weems, *Mississippi Law of Torts* § 4:1, at 48 (2002). This rule is as pragmatic as it is principled. In addition to adhering to the broad construction of Rule 702, courts' permissive attitudes toward expert witnesses in medical-malpractice suits recognize "the traditional reluctance of members of the profession to testify against each other, and the

14

difficulty of securing the testimony of a specialist in the same field as the defendant." *Bender on Medical Malpractice* § 29.02(3) (2008).

¶27.   More recently, though, Mississippi's longstanding, broad treatment of Rule 702 has been cast aside in favor of increasingly demanding requirements. Although our most recent decisions purport to adhere to the traditional standard, this Court has demanded more and more that "an expert . . . be of the same specialty as the doctor about whom the expert is testifying," while professing that such a rigid standard "is generally not required." ***Hubbard***, 954 So. 2d at 957.

¶28.   In 2004, for example, the Court found no error in a trial court's decision to allow a defendant's expert witness because all that was required to satisfy Rule 702 was "something more than unsupported speculation of subjective belief that is grounded in methods and procedures of science." ***Poole v. Avara***, 908 So. 2d 716, 723 (Miss. 2004). Whatever imperfections existed in the witness's qualifications, the Court reasoned, would be properly addressed during cross-examination. ***Id.*** at 724. That same holding described Rule 702 as "unquestionably flexible." ***Id.*** at 723. But only a year later, the Court found that a trial court correctly disqualified a family physician from testifying for a plaintiff about dialysis, a common procedure, because the witness "did not have the specialized knowledge to assist the trier of fact to understand the evidence . . . ." ***Cheeks v. Bio-Medical Applications, Inc.***, 908 So. 2d 117, 121 (Miss. 2005). By 2007, the Court's application of our "unquestionably flexible" Rule 702 had grown so rigid that it found no error in a trial court's decision to disqualify a seasoned neurologist seeking to testify about a neurological condition because,

15

according to the Court, the plaintiff offered no evidence that this neurologist "ha[d] any familiarity with" the relevant neurological condition. ***Hubbard***, 954 So. 2d at 958.

¶29.  Our case law now stands witness to the simple truth that Mississippi no longer adheres to the national standard. The restrictive approach enunciated in ***Hubbard***, and built upon today, conflicts with the expert-witness evidentiary rules of virtually every state in the country and may very well be the most restrictive approach in the nation. While this Court now requires nearly identical *curricula vitae* between defendant and witness, other states generally accept witnesses based not on their particular specialties but on the extent of their knowledge. In ***Pool v. Bell***, 209 Conn. 536, 551 A.2d 1254 (1989) (superseded by statute on other grounds), the Connecticut Supreme Court allowed a neurologist to testify as an expert against a general surgeon, despite the fact that the witness was not a professional clone of the defendant. "[T]he crucial question is whether the expert knows what the standards of practice are." *Id.* at 542 (citations omitted). In ***Roberts v. Warren***, 791 So. 2d 1278 (La. 2001), the Louisiana Supreme Court found an oral surgeon qualified to testify as an expert in a dental malpractice trial, not because the expert was familiar with the relevant procedure or even because of his particular expertise with oral surgery, but because "where there is a uniform nationwide method of performing a particular medical procedure, an expert having knowledge of such method is qualified to testify, and the testifying expert in this circumstance is not constrained by the need to have practiced . . . under similar circumstances." *Id.* at 1280. Georgia law, similarly, does not require an expert witness in a medical-malpractice case to be a specialist in the same area of medicine as the defendant. ***Rixey v. West Paces Ferry Hosp., Inc.***, 916 F.2d 608, 612 (11th Cir. 1990) (applying

16

Georgia law described in ***Beatty v. Morgan***, 170 Ga. App. 661, 317 S.E.2d 662, 664 (1984)).

Florida has permitted a neurosurgeon to testify against a gynecologist, ***Brown v. Sims***, 538

So. 2d 901 (Fla. Dist. Ct. App. 1989), just as the South Carolina Supreme Court found an

emergency medical technician qualified to testify to the standard of care owed by a defendant

anesthesiologist for the latter's performance *during an intubation*. ***Gooding v. St. Francis***

***Xavier Hosp.***, 326 S.C. 248, 487 S.E.2d 596 (1997). "A medical practitioner's experience

teaching and interacting with persons in the applicable specialty are sufficient to support his

qualification as an expert. Qualification depends on the particular witness' reference to the

subject." ***Id.*** at 253.

¶30.    Simply put, this Court has abandoned adherence to the traditional interpretation of

Rule 702. Gone are the days when this Court found Rule 702 satisfied when an expert was

qualified to testify with an opinion grounded in "something more than unsupported

speculation of subjective belief that is grounded in methods and procedures of science,"

***Poole v. Avara***, 908 So. 2d 716, 723 (Miss. 2004), and this Court seems increasingly

disinterested in the plain language of the rule itself, which clearly notes that expert witnesses

may be qualified not only by virtue of experience, but also by knowledge, skill, training, or

education. Miss. R. Evid. 702. In the case at bar, any deficiencies in these experts'

knowledge could have been exposed by competent cross-examination.

¶31.    Plaintiff's expert witnesses in the instant case undoubtedly satisfy Mississippi's

traditional requirements for qualification of expert witnesses. Dr. Rodrigo Galvez, one of

McDonald's proffered witnesses, testified in his deposition that he has knowledge of ear,

nose, and throat treatment dating back to his days as an intern in New York in the 1960s. He

17

performed intubations and EGDs during his time in medical school, and he has experience charting patients under do-not-resuscitate status and explaining that status to patients' families. Likewise, Dr. George Nichols is also qualified to testify under the Court's longstanding Rule 702 treatment. As a forensic pathologist, Nichols's *curriculum vitae* undoubtedly does not parallel Teran's, but he deposed that he is well studied in the area of "human biologic fluids . . . [,] how they relate to disease or to health . . . [and] how a person goes from alive to dead." Nichols and Galvez certainly have the "knowledge, skill, experience, training, or education" necessary to "assist the trier of fact to understand the evidence . . . ." Miss. R. Evid. 702.

¶32. But even under the Court's new, overly restrictive approach legislated in ***Hubbard***, the proffered experts still should have been permitted to testify. As forensic pathologists, Galvez and Nichols both are deeply experienced in the innumerable causes of death that human beings encounter. In ***Hubbard***, this Court found "*no evidence* that [the proffered expert witness] has any familiarity with the standard of care that would be required . . . ." ***Hubbard***, 954 So. 2d at 958 (emphasis added). No such lack of evidence exists in this case. As Galvez told his deposer, "I know the lung pathology very well, but I wouldn't dare to treat anybody with a lung problem. But I know when the treatment is good or causes some damage to the patient; that's part of pathology." As was the case in the Pennsylvania case of ***Smith v. Paoli Memorial Hospital***, 885 A.2d 1012 (Pa. Super. 2005), the experts' bodies of knowledge overlap the relevant area of medical care to a sufficient degree to make their testimony helpful to the trier of fact. Unless we are prepared again to trim back Rule 702 and, for all practical purposes, jettison the notion that "the artificial classification by title . . .

18

should [not] govern the threshold question of admissibility," *Hubbard*, 954 So. 2d at 957, then it cannot be said that McDonald's experts lacked the "knowledge, skill, experience, training, or education" to "assist the trier of fact to understand the evidence . . . ." Miss. R. Evid. 702.

¶33. A trial court necessarily abuses its discretion when it applies an incorrect legal standard. *See **Burkett v. Burkett***, 537 So. 2d 443, 446 (Miss. 1989). In this case, the trial court failed to look beyond the proffered experts' professional titles to consider knowledge, training, or education. As a violation of the plain language of Rule 702, this oversight amounts to an abuse of discretion.

¶34. Therefore, I would reverse the trial court's grant of summary judgment in favor of Dr. Teran and remand McDonald's relevant claims for trial. From my learned colleagues' decision to the contrary, I respectfully dissent.

**GRAVES, P.J., JOINS THIS OPINION.**