# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00173-COA

JAKYRA CLARK, INDIVIDUALLY, AND AS
NEXT FRIEND AND NATURAL GUARDIAN OF
J.C., A MINOR

APPELLANT

v.

VICKSBURG HEALTHCARE, LLC D/B/A
RIVER REGION MEDICAL CENTER, RIVER
REGION HEALTH SYSTEMS, MERIT HEALTH
RIVER REGION, AND MERIT HEALTH RIVER
REGION WEST

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 01/15/2021 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ANITA M. STAMPS |
| | LARRY STAMPS |
| ATTORNEYS FOR APPELLEES: | R. E. PARKER JR. |
| | CLIFFORD C. WHITNEY III |
| | PENNY B. LAWSON |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/13/2022 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**EMFINGER, J., FOR THE COURT:**

¶1. Jakyra Clark filed a complaint in the Warren County Circuit Court on behalf of her

infant son, J.C., and herself, seeking damages for injuries she and J.C. suffered while J.C.

was under the care of Vicksburg Healthcare LLC d/b/a/ River Region Medical Center, River

Region Health Systems, Merit Health River Region, and Merit Health River Region West

(collectively "River Region"). Jakyra appeals from the circuit court's order granting River

Region's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On July 17, 2017, J.C., who was ten days old, was suffering from a cold and nasal congestion. Jakyra carried him to River Region where he was diagnosed with an RSV infection and was admitted to the hospital for observation, with orders for a chest x-ray and other tests. According to Nurse Kay Winpigler's deposition testimony, when she was attempting to take J.C.'s vital signs, she placed him on the bed lengthways. The railing on the bed was down so the nurse could get to the child to take his blood pressure. Winpigler testified that when she is taking a child's vital signs, she normally has her hand on the child. In this instance, she had to reach for the blood pressure machine to turn it around. Winpigler said that while she was turning the machine around, she must have lifted her hand off J.C. and he fell from the bed onto the tile floor.

¶3. J.C.'s mother described the event differently. According to Jakyra's deposition testimony, she laid J.C. down on the bed so that the nurse could take the baby's clothes off to get his vital signs. Jakyra was on one side of the bed, and Winpigler was on the other side. Jakyra stated that after undressing J.C., Winpigler picked him up to turn him around and put him on the "weighing thing," which was beside the bed. At this point, while J.C. was in Winpigler's hands, she dropped the baby to the floor.

¶4. As a result of hitting his head on the floor, J.C. was found to have a non-depressed, linear skull fracture. He was transferred to the University of Mississippi Medical Center, admitted for overnight observation, and discharged the next morning. Later, on April 10,

2

2018, an x-ray of J.C.'s skull was taken, and the fracture was no longer visible.

¶5.   Jakyra filed her complaint on April 5, 2019. An amended complaint was filed on June 26, 2019, in which Jakyra sought damages from the defendants for negligence and breach of warranty. After the deadlines set by the trial court for the designation of experts and for the completion of discovery had passed, River Region filed its motion for summary judgment. River Region argued that Jakyra had failed to designate a medical expert witness and had failed to make out a prima facie case of medical negligence and gross negligence. Further, River Region argued that the claim for breach of warranty was not applicable to this case.

¶6.   In her response to the motion for summary judgment, Jakyra argued that this is not a case where a medical expert was required to establish that the nurse breached the standard of care by allowing a ten-day-old infant to fall to the floor while in her care, regardless of which version of events a jury might believe. Instead, she argued that the "layman's exception" was sufficient to establish her claim under the facts of this case. In support of her contention that an expert was not required in this case, Jakyra attached to her response portions of her deposition and portions of Winpigler's deposition, describing the events of that day as set forth above.[1]

¶7.   After reviewing the pleadings and hearing oral arguments on the motion for summary judgment, the trial court granted the motion. The trial court held that there was no "precedent extending [the layman's exception] to hospital falls." The court found that neither the layman's exception nor res ipsa loquitur doctrine apply in this case. The court also found that

---

[1] While Jakyra opposed the summary judgment motion as to her claim of medical negligence, she abandoned her claim for breach of warranty in her response.

Jakyra's motions for a continuance of the trial date and for modification of the scheduling order were moot in light of the order granting summary judgment.

## ANALYSIS

¶8. On appeal Jakyra raises three assignments of error, which we will address separately below.

### I.     Did the trial court err by granting summary judgment?

¶9. The familiar standard of review of the grant of summary judgment has recently been repeated in *Cooley v. Pine Belt Oil Co. Inc.*, 334 So. 3d 118, 125-26 (¶18) (Miss. 2022):

> "This Court employs a de novo standard of review when considering a trial court's grant or denial of summary judgment." *Hobson v. Chase Home Fin.*, LLC, 179 So. 3d 1026, 1033 (¶25) (Miss. 2015) (citing *WW, Inc. v. Rainbow Casino-Vicksburg P'ship L.P.*, 68 So. 3d 1290, 1292 (¶6) (Miss. 2011)). "In considering this issue, we must examine all the evidentiary matters before us, including, inter alia, admissions in pleadings, answers to interrogatories, depositions and affidavits." *Webb v. Braswell*, 930 So. 2d 387, 395 (¶12) (Miss. 2006) (citing *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996)). "We are to view the evidence in the light most favorable to the party opposing the motion." *Id*. (citing *Stallworth v. Sanford*, 921 So. 2d 340, 341-42 (¶5) (Miss. 2006)). "The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists." *Hobson*, 179 So. 3d at 1033 (¶25) (internal quotation marks omitted) (quoting *WW, Inc.*, 68 So. 3d at 1292 (¶6)). "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor." *Webb*, 930 So. 2d at 395 (¶12) (citing *McCullough*, 679 So. 2d at 630).

¶10. The plaintiff's burden in a case of medical negligence was identified in *South Central Regional Medical Center v. Regan*, 303 So. 3d 432, 438-39 (¶9) (Miss. Ct. App. 2020):

> The Mississippi Supreme Court has held that for a plaintiff to establish a prima facie case of medical negligence, he or she must prove each of the following elements: "(1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2)

the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury; and (4) the plaintiff was injured as a result." *Mid-South Retina LLC v. Conner*, 72 So. 3d 1048, 1050-51 (¶8) (Miss. 2011) (citing *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 180 (Miss. 2009)) (other citations omitted). **Further, "medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience."** *Henson v. Grenada Lake Med. Cent.*, 203 So. 3d 41, 44 (¶8) (Miss. Ct. App. 2016) (quoting *McDonald*, 8 So. 3d at 180 (¶10) (Miss. 2009)). "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must establish that the failure was the proximate cause, or proximate contributing cause of the alleged injuries." *Id.* at (¶10) (quoting *Hubbard v. Wansley*, 954 So. 2d 951, 957 (¶12) (Miss. 2007)).

(Emphasis added). In the case at hand, the circuit court granted River Region's motion for summary judgment based on Jakyra's failure to provide the necessary sworn testimony from a medical expert as set forth above. Jakyra argued before the trial court, and now on appeal, that no expert is required because the "layman's exception" applies in this case where a nurse allowed a ten-day-old infant in her custody and control to fall to the floor as she was checking the infant's vital signs.

¶11.    While there are many cases that identify the "layman's exception" in their analyses of the requirement of a medical expert in medical negligence cases, there are very few cases that actually apply the exception.[2] River Region argues that *Jackson HMA LLC v. Harris*, 242 So. 3d 1, 6 (¶12) (Miss. 2018), and other cases cited in the briefs require a medical expert's testimony in "fall cases" in medical facilities. They contend that the "layman's exception"

---

[2] The "layman's exception" was applied in *Coleman v. Rice*, 706 So. 2d 696, 698 (¶11) (Miss. 1997), where the supreme court stated, "A layman can understand, without expert testimony, that the unauthorized or unexplained leaving of an object inside a patient during surgery is negligence."

has never been applied to "fall cases" in a medical setting. While this may be true, those "fall cases" all involved elderly, post-surgery, or other adult patients and are factually more complex than the present case.

¶12.    In this case, a juror could easily understand, without the aid of an expert, that the nurse was negligent by allowing a ten-day-old infant to fall to the floor while she was checking the infant's vital signs[3] and that such negligence breached the standard of care the nurse owed to the infant would be "a matter of common sense and practical experience." We find that the layman's exception applies to this portion of Jakyra's medical negligence claim (paragraph 12(a) of the amended complaint) and that the deposition testimonies of Jakyra and Winpigler are sufficient to create a genuine issue of material fact as to whether River Region breached the standard of care in this regard. Accordingly, we find that the trial court erred in granting summary judgment as to this portion of the medical negligence claim for lack of an expert witness.

¶13.    However, the same cannot be said for the other parts of Jakyra's medical negligence claim. The medical negligence claim set out in paragraph 12 of the amended complaint states in part:

> The defendants were the sole and/or contributing proximate cause of the personal injury to [J.C.], the minor child, and Jakyra Clark including, but not limited to the following negligence, gross negligence, nonfeasance or malfeasance, as follows:

---

[3] Although not necessary to determine the nurse was negligent, a medical expert may still be required in order to prove that certain injuries were caused by the nurse's negligence. That issue was not raised in the motion for summary judgment and is not addressed by this decision.

(a) The failure of the nurses to securely place Plaintiff [J.C.] in a safe position to avoid dropping him;

(b) River Region failed to properly train staff to avoid dropping the minor child plaintiff;

(c) The failure of River Region hospital staff to utilize bed guard rails preventing [sic] [J.C.] to avoid dropping him;

(d) The failure of River Region Hospital to update training of John Doe nurse(s) and Nurse Kay handling Plaintiff and to recognize the presence of safety threats in caring for Plaintiff J.C.;

Whether the staff was adequately trained and updated on the use of the available medical equipment and on the recognition of safety threats is not within the common knowledge of lay persons. Accordingly, we affirm the grant of summary judgment as to the claims contained in paragraphs 12(b), 12(c) and 12(d) of the amended complaint.

**II.     Did the trial court err by failing to grant the Plaintiff's motion for a continuance and motion to modify the scheduling order?**

¶14.    As properly noted by the trial court, these motions were filed past the motion-filing deadline set forth by the court's scheduling order. In any event, neither motion asked for a continuance of the hearing on the motion for summary judgment. These motions were directed toward the continuance of the trial date and the need for Jakyra to obtain an opinion from a medical expert concerning any lasting damage suffered by J.C. as a result of the fall. The trial court found that because summary judgment was granted, these motions were moot. As a result of the remand of a portion of the claims, the matters raised in these motions may be resubmitted to the trial court should the need still exist.

**III.    Did the trial court abuse its discretion by entering a scheduling order without the agreement of both parties?**

7

¶15.    Jakyra admits that both parties were advised by the trial court that a proposed agreed-scheduling order should be submitted by August 14, 2020. When the parties could not agree on a scheduling order, the trial court entered its own order on August 17, 2020.[4] Concerning the court's authority to manage its docket, in *Bowie v. Montfort Jones Memorial Hospital*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003), the supreme court reasoned:

> Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril. *See, e.g.*, *Kilpatrick v. Miss. Baptist Med. Ctr.*, 461 So. 2d 765, 767-68 (Miss. 1984) (held that trial court did not abuse discretion in dismissing case due to failure to comply with pre-rules discovery statutes relating to timely designation of expert witnesses); *Mallet v. Carter*, 803 So. 2d 504, 507-08 (¶9) (Miss. Ct. App. 2002) (held that trial court did not abuse discretion in dismissing case for failure to timely designate expert witness within the time allowed by the trial court's scheduling order).

The trial court did not abuse its discretion by entering the scheduling order. Jakyra had the right to seek a modification of the scheduling order and, as noted above, did so. This assignment is without merit.

## CONCLUSION

¶16.    As to Jakyra's claim for medical negligence as set forth in paragraph 12(a) of the amended complaint, the grant of summary judgment is hereby reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion. As to Jakyra's remaining claims for medical negligence set forth in paragraphs 12(b), 12(c) and

---

[4] While the style of the order is "Agreed Scheduling Order," the order was signed only by the judge. Neither party signed the order.

12(d) of the amended complaint, the grant of summary judgment is affirmed.

¶17.     **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

      **CARLTON AND WILSON, P.JJ., McCARTY AND SMITH, JJ., CONCUR. BARNES, C.J., AND WESTBROOKS, J., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION.  GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WESTBROOKS, McDONALD AND LAWRENCE, JJ.**

      **GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶18.     I concur with Parts II and III of the lead opinion and agree that summary judgment should be reversed and the case remanded for the circuit court to apply the layman's exception to the failure of the nurses to properly secure J.C.  Because the circuit court did not cover the other negligence issues, instead just stating that there is no precedent that applies the layman's exception, I would remand the other three subparts of the negligence claim.

¶19.     In the amended complaint, the claim for negligence was broken into four subparts: that Vicksburg Healthcare failed to (1) safely secure J.C.; (2) properly train its staff; (3) utilize bed guard rails; and (4) update its nurses' training procedures.  The circuit court never addressed the negligence claim by discussing its subparts.  Rather, the circuit court analyzed the issue as one claim of negligence, specifically focusing on the issue of the infant's fall. Because the circuit court did not reach the other three claims but ruled that the layman's exception did not apply, I would remand without ruling on those issues.

      **BARNES, C.J., WESTBROOKS, McDONALD AND LAWRENCE, JJ., JOIN THIS OPINION.**