# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-IA-00034-SCT

*UNIVERSITY OF MISSISSIPPI MEDICAL CENTER*

*v.*

*VINCENT KELLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2021 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | PHILIP W. GAINES |
| | STEPHEN P. KRUGER |
| | T.L. "SMITH" BOYKIN, III |
| | BARRY W. HOWARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEPHEN P. KRUGER |
| | T.L. "SMITH" BOYKIN, III |
| | HANNAH KATHERINE HERRIN |
| ATTORNEYS FOR APPELLEE: | PHILIP W. GAINES |
| | BARRY W. HOWARD |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND RENDERED - 03/16/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    In this interlocutory appeal, the University of Mississippi Medical Center (UMMC) appeals the denial of its motion for summary judgment. UMMC asserts that Vincent Kelly's expert witness lacked qualifications, rendering him unable to prove the required elements of medical malpractice.  This Court agrees and reverses the judgment of the Hinds County Circuit Court. Summary judgment is rendered in favor of UMMC.

## FACTS AND PROCEDURAL HISTORY

¶2.    Kelly was injured in a forklift accident at his workplace on August 14, 2019.  His left foot was crushed.  Kelly was taken to Mississippi Baptist Medical Center and then was transferred to UMMC. An X-ray indicated that he had sustained lacerations on the second, third, and fifth toes, and fractures of the first and third through fifth toes. UMMC administered pain and antibiotic medications.

¶3.    Kelly was then evaluated and treated by an orthopedic surgeon. The orthopedic surgeon reduced one fracture, washed and dressed the wounds, and prescribed additional pain and antibiotic medications. He also instructed Kelly to keep weight off of the left foot to promote tissue rest and to attend a follow-up appointment at the Jackson Medical Mall in ten days for further orthopedic evaluation and care.  Kelly was also given "strict precautions to return for changes in neurovascular status of his foot . . . or changes in color."

¶4.    On August 19, Kelly returned to UMMC.  He complained of  uncontrolled pain and discoloration of his third and fourth toes, which he said had turned black the previous day. UMMC orthopedic surgeon Patrick Bergin, M.D., took over Kelly's care. The next day, Dr. Bergin performed a surgical evaluation of Kelly's left foot and toes.  Dr. Bergin determined that Kelly's third and fourth toes were dysvascular (lacking circulation or blood flow) and in need of amputation. Dr. Bergin then proceeded to amputate the two toes and obtained wound cultures, which confirmed infection. After the procedure, Dr. Bergin continued to provide care to Kelly for his wounds and infection.

¶5.    Kelly commenced this lawsuit and a claim for medical malpractice.  Kelly alleged that UMMC's physicians failed to properly treat the injury during his August 14 visit. Kelly

2

asserted that the infection resulted from medical negligence in the course of his care at UMMC and that the infection necessitated the amputation of his two toes.

¶6. UMMC, through Dr. Bergin's expert testimony, responded that the care provided to Kelly complied with the appropriate standard of care. Dr. Bergin testified that the infection was a direct consequence of the crush injury, which impeded circulation of the antibiotic medications administered to and prescribed for Kelly, and the subsequent amputation could not have been prevented by different care.

¶7. UMMC filed a motion for summary judgment. UMMC argued that Kelly's claim was unsupported by expert testimony. In opposition, Kelly presented an affidavit from his expert witness, Dr. Joseph White. Kelly argued that this affidavit presented a genuine issue of material fact about UMMC's negligence and that the affidavit was sufficient to defeat UMMC's motion for summary judgment. UMMC objected to Dr. White's affidavit. UMMC argued that (a) there was no evidence of Dr. White's qualifications to offer expert testimony, and (b) Dr. White's affidavit did not articulate the required elements to establish a prima facie claim of medical malpractice.

¶8. After UMMC's motion for summary judgment was denied, UMMC sought interlocutory appeal. This Court granted UMMC permission to proceed with this appeal.

## DISCUSSION

I. *The circuit court erred by finding that Dr. White was qualified as an expert witness.*

¶9. "The standard of review for the admission or exclusion of expert testimony is abuse of discretion." **Patterson v. Tibbs**, 60 So. 3d 742, 748 (Miss. 2011) (citing **Utz v. Running**

*& Rolling Trucking, Inc.*, 32 So. 3d 450, 457 (Miss. 2010)). "Furthermore, the admission of expert testimony is within the sound discretion of the trial judge." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003) (citing *Puckett v. State*, 737 So. 2d 322, 342 (Miss. 1999)). The trial court's decision will not be reversed unless it clearly appears that the witness is not qualified. *Id.* (citing *Puckett*, 737 So. 2d at 342). This Court finds error in the trial court's decision only if the decision was "arbitrary and clearly erroneous." *Franklin Corp. v. Tedford*, 18 So. 3d 215, 237 (Miss. 2009) (internal quotation marks omitted) (quoting *Troupe v. McAuley*, 955 So. 2d 848, 856 (Miss. 2007)).

¶10.    Under Mississippi Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Further, this Court has ruled that:

> "Under Mississippi Rule of Evidence 702, expert testimony should be admitted only when the trial court can affirmatively answer a two-fold inquiry." The first prong mandates that a witness must be qualified by virtue of his or her knowledge, skill, experience, or education. Second, "the witness's scientific, technical, or other specialized knowledge must assist the trier of fact to understand or decide a fact in issue." Put simply, the expert's proposed

4

testimony must be both relevant to the case at hand and based on reliable methodology. This standard is generally known as the ***Daubert*** standard.[1]

***Clark v. State***, 315 So. 3d 987, 995 (Miss. 2021) (citations omitted), *cert. denied*, 142 S. Ct. 466, 211 L. Ed. 2d 283 (2021) (mem.).

¶11.    An expert does not need to be "a specialist in a particular branch within a profession[.]" ***Worthy v. McNair***, 37 So. 3d 609, 616 (Miss. 2010) (internal quotation mark omitted) (quoting ***Causey v. Sanders***, 998 So. 2d 393, 403 (Miss. 2009)). Rather, "[i]t is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." ***Id.*** (citing ***Causey***, 998 So. 2d at 403); *see also* ***Thompson v. Carter***, 518 So. 2d 609, 614 (Miss. 1987) (stating "[a] witness may qualify as an expert based on his knowledge, skill, experience, training education or a combination thereof"). This Court, however, clarified that "before one may testify as an expert, that person must be shown to know a great deal regarding the subject of his testimony." ***Thompson***, 518 So. 2d at 614 (citing MRE 702). For Dr. White's testimony to be considered, Kelly must also show that Dr. White has satisfactory familiarity with the specialty of the defendant doctor to testify to the standard of care owed. ***Id.***; *see also* ***West v. Sanders Clinic for Women, P.A.***, 661 So. 2d 714, 718-19 (Miss. 1995)).

¶12.    Dr. White's affidavit states that he is licensed, trained, and has experience in the medical field, and his qualifications were listed in his *curriculum vitae,* which the affidavit stated was "[a]ttached as Exhibit 'A.'" Dr. White's CV, however, was not attached to the

---

[1] ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

affidavit and was not submitted before this Court. UMMC argued that Dr. White's CV was not attached to the response in opposition to the motion for summary judgment nor was it submitted to the trial court. As such, any supposed qualifications in Dr. White's CV cannot be considered by this Court.

¶13. It is undisputed, however, that Dr. White is both a licensed doctor and is an emergency medicine physician. Nevertheless, being a licensed and practicing doctor is not sufficient. *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 181 (Miss. 2009) (finding that a pathologist and psychiatrist is not qualified to testify against a gastroenterologist because the plaintiff failed to show that the expert had practiced in the specific field and experience in a similar case). Dr. White's experience in emergency medicine is not enough to show he has experience or knowledge over the care of impact injuries or infections.

¶14. "The proponent of expert testimony has the burden of establishing the admissibility of such testimony." *Corrothers v. State*, 148 So. 3d 278, 328 (Miss. 2014) (Randolph, P.J. concurring) (citing *McLemore*, 863 So. 2d at 36). As stated by UMMC, "there was absolutely no showing—neither by declaration of expertise nor presentation of a curriculum vitae—that Dr. White was qualified to this issue." Without any record of training, experience, or specialization in the specific area of medicine in question here, this Court cannot find that Dr. White met this Court's threshold to be qualified as an expert witness. Therefore, we find that the trial court abused its discretion by finding that Dr. White qualified as an expert.

> II. *The circuit court erred by denying UMMC's motion for summary judgment.*

¶15. "[A]ppellate review of the trial court's grant or denial of a motion for summary judgment requires the application of *de novo* review." *Adams v. Graceland Care Center of Oxford, LLC*, 208 So. 3d 575, 579 (Miss. 2017) (citing *Copiah Cnty. v. Oliver*, 51 So. 3d 205, 207 (Miss. 2011)). Summary judgment is granted if the movant, UMMC, has shown that there is no genuine dispute of any material fact and that the movant is entitled to judgment as a matter of law. M.R.C.P. 56(c). When the moving party can show a failure of proof on an essential element of a claim for which the nonmovant will bear the burden of proof at trial, "all other facts are immaterial, and the moving party is entitled to judgment as a matter of law." *Moore ex rel. Moore v. Miss. Valley Gas Co.*, 863 So. 2d 43, 47 (Miss. 2003) (internal quotation mark omitted) (quoting *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987)).

¶16. To establish a prima facie case of medical negligence, Kelly must demonstrate through medical-expert testimony (1) the applicable standard of care; (2) UMMC personnel's failure to conform to that standard of care; and (3) an injury (4) proximately caused by UMMC personnel's deviation from that standard of care. *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 523 (Miss. 2019). "As a rule, [Kelly] must demonstrate each of these elements through medical-expert testimony[.]" *Id.* (citing *Hubbard v. Wansley*, 954 So. 2d 951, 957 (Miss. 2007)). He "carries the burden of proof at trial and, thus, the burden of production on summary judgment." *Johnson v. Pace*, 122 So. 3d 66, 68 (Miss. 2013) (citing *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990)). Kelly may "not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or

as otherwise provided . . . [had to] set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

¶17.   Based on our *de novo* review, this Court finds that Kelly failed to submit sufficient evidence in the record to establish that Dr. White qualified as an expert witness; accordingly, Dr. White's testimony is inadmissible. ***Worthy***, 37 So. 3d at 617 (finding that expert testimony unreliable under the ***Daubert*** test is inadmissible under Rule 702). "[A]bsent error so obvious that a layman could easily determine fault, expert testimony is generally required to survive summary judgment and establish the negligence of a physician."[2] ***Sheffield v. Goodwin***, 740 So. 2d 854, 856 (Miss. 1999). Kelly submitted no other evidence to overcome summary judgement. Without any expert testimony, summary judgment must be granted in favor of UMMC. ***Norman***, 262 So. 3d at 523.

¶18.   Therefore, we find that the trial court erred by denying summary judgment motion.

## CONCLUSION

¶19.   Based on our de novo review, this Court finds the trial court erred by denying UMMC's motion for summary judgment. The Court reverses the judgment of the trial court. Summary judgment is rendered in favor of UMMC.

¶20.   **REVERSED AND RENDERED.**

   **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

[2] "[I]t is possible that establishing the duty and breach of duty . . . does not require expert testimony." ***Maxwell v. Baptist Mem'l Hosp.-DeSoto, Inc.***, 958 So. 2d 284, 288 (Miss. Ct. App. 2007). This Court, however, finds that medical expert testimony is necessary to establish causation between UMMC's chosen timeline and Kelly's infection and toe amputation.

8