# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-02114-SCT

*MARTHA K. EKORNES-DUNCAN*

*v.*

*RANKIN MEDICAL CENTER AND STEVEN L. CHOUTEAU*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/26/2000 |
| TRIAL JUDGE: | HON. JOHN T. KITCHENS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARTHA A. L. ELLIOTT |
| | JOHN M. ROBIN |
| ATTORNEYS FOR APPELLEES: | CAROLYN ALLEEN McLAIN |
| | GEORGE QUINN EVANS |
| | RICHARD C. WILLIAMS, JR. |
| | TOMMIE G. WILLIAMS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 2/28/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/21/2002 |

**BEFORE McRAE, P.J., DIAZ AND CARLSON, JJ.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Martha K. Ekornes-Duncan ("Duncan") brought a wrongful death action in the Circuit Court of Rankin County against several defendants, including Rankin Medical Center ("RMC") and Dr. Stephen Chouteau ("Dr. Chouteau"), alleging medical negligence in the treatment of her son Timothy Smith ("Smith"). RMC was granted summary judgment as to the independent nursing negligence claim, and the trial concluded with a jury verdict in favor of Dr. Chouteau and RMC vicariously. Duncan then appealed to this Court.

¶2. Duncan alleges the trial court erred in granting summary judgment to RMC. She also finds error with the trial court's decisions to deny her motions for continuance, prohibit introduction of demonstrative evidence, allow the introduction of undisclosed business records, limit cross-examination of a medical expert and permit improper closing arguments. We find Duncan committed violations of Mississippi discovery rules and more importantly, that no negligence on the part of the hospital was shown. We also find no reversible error in the trial below. Thus, we affirm the grant of summary judgment to RMC and affirm the judgment entered on the jury verdict in favor of Dr. Chouteau and RMC vicariously.

## FACTS

¶3. Smith was involved in an automobile accident on December 30, 1995, in which he sustained serious injuries. Paramedics removed Smith from his vehicle, treated him at the scene, and placed him in an ambulance. He arrived at RMC's emergency room at 11:20 p.m. RMC staff, Dr. Chouteau, the physician on duty, and Dr. Jeffrey Henry Glover, the surgeon on call, treated Smith.

¶4. At approximately 2:40 a.m., Smith's blood pressure dropped severely, and his condition deteriorated quickly. Dr. Chouteau and Nurse Perry Tillman began CPR, and Dr. Glover was called to the hospital. Dr. Chouteau testified that Smith's aorta was probably injured in the accident and ruptured at 2:40 a.m. Once Smith was stabilized by the doctors and staff of RMC, he was taken to ICU at approximately 5:00 a.m. The doctors and nurses were unable to save Smith, and he died at approximately 11:10 a.m. as a result of the ruptured aorta.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE SECOND MOTION FOR SUMMARY JUDGMENT

¶5. In granting the second motion for summary judgment, the trial court found that Duncan did not have a qualified medical expert to testify as to the standard of care owed by RMC. It was not until July 2000, when Duncan supplemented discovery requests, that it became apparent that Duncan did not have a medical expert to support her claim against RMC. Duncan produced a December 1, 1997, letter from Dr. Barbara J. Abrams to Duncan's attorney which stated an opinion against Dr. Chouteau only and not against RMC, although the testimony was artfully drawn in an affidavit to get by the first summary judgment.

¶6. By her own admission, Dr. Abrams was not a suitable expert to testify as to independent nursing negligence on the part of RMC. She averred in her December 1, 1997, letter that "[c]omments regarding the negligence of the hospital itself and the Pearl Police Department would not be within my area of expertise. . . Thus, I can not (sic) attribute any specific acts of negligence on the part of the hospital itself." She stated in a subsequent clarification letter, "I am not stating that the hospital is not negligent. What I am stating is that as an expert in Emergency Medicine, commenting on other issues (i.e. such as nursing documentation) would not necessarily be considered my area of expertise." Even though the statements in the December 1, 1997, letter could possibly permit Dr. Abrams to testify under the layman's exception as to such issues as RMC violating its own policies, there are still issues to which a medical expert in the appropriate field of expertise would have to testify, namely, the standards of care. See *Sheffield v. Goodwin*, 740 So.2d 854, 856 (Miss. 1999); *Coleman v. Rice*, 706 So.2d 696, 698 (Miss. 1997).

¶7. Duncan was able to disguise Dr. Abrams as a proper medical expert on the claims against RMC by concealing the December 1, 1997, letter for over three years. Had the letter been disclosed earlier, the fact that Dr. Abrams was not an expert in the required field would have been brought to light and, conceivably, at such an early stage in the litigation, Duncan could have retained a suitable expert. Even through oral arguments before this Court Duncan gave no explanation as to why a medical expert was never obtained to support the nursing negligence issues.

¶8. In an effort to thwart summary judgment again, Duncan designated two registered nurses as experts, John Kocke ("Kocke") and Rebecca Bankston ("Bankston"), and produced their affidavits five weeks before trial. The trial court granted RMC's motions to strike the affidavits and designations holding they were not timely filed in accordance with our discovery rules since RMC had requested designation of

experts via discovery three years earlier. Duncan was left with no medical expert to testify as to RMC's negligence after the expert affidavits and designations were stricken.

¶9. The designation of the two registered nurses, five weeks before trial is also unacceptable, not necessarily because of the proximity to trial, but because Duncan had known since the lawsuit was filed in 1997 that a medical expert would be needed for the claims asserted against the hospital. Also, she never argued in opposition to summary judgment or elsewhere that the layman's exception applied. Duncan's violations of our discovery rules ultimately led to summary judgment in favor of RMC.

¶10. We review rulings on discovery violations for abuse of discretion. See *Gray v. State*, 799 So.2d 53, 60 (Miss. 2001) (citing *Paulk v. Housing Auth.*, 228 So.2d 871, 873 (Miss.1969)). Further, discovery responses are to be supplemented seasonably pursuant to Rule 26(f) of the Mississippi Rules of Civil Procedure. We have held that "[s]easonably does not mean several months later. It means immediately." *West v. Sanders Clinic for Women, P.A.*, 661 So.2d 714, 721 (Miss. 1995). Additionally, "seasonableness must be determined on a case by case basis looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit." *Blanton v. Board of Supervisors*, 720 So.2d 190, 195 (Miss. 1998). Even though the need for a medical expert regarding the alleged hospital negligence is questionable, Duncan failed to show any negligence on RMC's part. The stricken affidavits did not establish negligence either. The fact is that Dr. Chouteau and the radiologist on duty gave a preliminary diagnosis of Smith's injuries, took x-rays and were looking for a ruptured aorta, the very injury for which Duncan claims the nurses were not looking. All parties agreed that if Smith's aorta had been ruptured, immediate attention would have been necessitated, and there is very little, if anything, one can do after a rupture.

¶11. The judge was correct in his discovery ruling, and we cannot reverse a trial judge in granting summary judgment, even on the merits of the case the second time around, since no negligence was shown on the part of the hospital. Even if the affidavits were allowed, the negligence assigned had already been provisionally diagnosed as the doctors were looking for a possible injured aorta.

¶12. We find the production of the December 1, 1997, letter three years after discovery had been propounded and the subsequent designation of experts in response to the motion for summary judgment were gross violations of our discovery rules. Therefore, we find no abuse of discretion was committed in the rulings on said matters and no error in the resulting grant of summary judgment.

## II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT DUNCAN'S MOTIONS FOR CONTINUANCE

¶13. Duncan moved for a continuance on the first day of trial after Dr. Chouteau objected, during Duncan's opening statement, to the reference made and the use of Dr. Abrams's testimony concerning certain tests that should have been performed. After much discussion, the judge denied the motion to continue, opening statements were completed and Dr. Chouteau's testimony began. The next morning before the jury came into the courtroom, Duncan again requested a continuance arguing that she was going to be severely prejudiced in the presentation of the case because she was being forced to call her expert witness out of preferred order since the trial began a day late and her expert had to return to her home state. The trial judge denied the motion.

¶14. In *Cherry v. Hawkins*, 243 Miss. 392, 397,137 So.2d 815, 816 (1962), we clearly stated that a

denial of continuance will not be reversed unless a prejudice resulted. We have also held that "[t]he granting of a continuance is largely a matter within the sound discretion of the trial court and unless manifest injustice appears to have resulted from a denial, this Court should not reverse." *Morgan v. Greenwaldt*, 786 So.2d 1037, 1045 (Miss. 2001) (citations omitted). Further, we have said that "the trial court may exercise 'reasonable latitude' in the setting and continuance of cases." *Id.* (citations omitted).

¶15. We find nothing to substantiate Duncan's claim that she suffered injustice or prejudice from the denial of her motions for continuance. Trials are delayed and witnesses are called out of order on a regular basis in trial courts. Litigants are entitled to a fair trial, but not a perfect trial. We find no abuse of discretion in the denial of said continuances.

### III. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING EVIDENCE OF PRIOR FELONY CONVICTIONS OF WITNESS TILLMAN

¶16. Tillman was the nurse who treated Smith in the emergency room the night of the accident. Duncan sought to attack Tillman's credibility through the introduction of two felony convictions for forgery that were over twenty years old and through employment records which contained a falsified employment application. Her position was that discrepancies existed in Smith's medical records in which Tillman made many of the entries and that an inference existed that the records may have been altered.

¶17. This issue is moot as we have already found that the trial court was correct in granting summary judgment to RMC. Therefore, the only issue before the jury was whether Dr. Chouteau was negligent in his care and treatment of Smith.

### IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING DR. CHOUTEAU TO USE RMC'S HOSPITAL LOG BOOK AND IN DISALLOWING DUNCAN THE USE OF AN UNIDENTIFIED PERSON'S X-RAYS AS DEMONSTRATIVE EVIDENCE

### A. DR. CHOUTEAU'S USE OF THE HOSPITAL LOG BOOK

¶18. Duncan claims she was prejudiced by the trial court allowing Dr. Chouteau to use the "Register of Operations", RMC's log book of operations performed, because it was a previously undisclosed business record. However, she offers no authority in support of this argument, consequently, this issue is not properly before us. *See R.C. Petroleum, Inc. v. Hernandez*, 555 So.2d 1017, 1023 (Miss.1990). We have been clear "that when a litigant fails to cite authority for his claim of error, we will not address them." *Gerrard v. State*, 619 So.2d 212, 216 (Miss. 1993) (citing *Wright v. State*, 540 So.2d 1 (Miss.1989) (claims with no citation to authority in support are not properly before the Court)). Duncan has an affirmative duty to address the issues she raises and to give authoritative support for her position. *Gerrard*, 619 So.2d at 216. Failure to do so is fatal to her argument on this appeal.

### B. DENIAL OF THE USE OF AN UNIDENTIFIED PERSON'S X-RAYS AS DEMONSTRATIVE EVIDENCE

¶19. Duncan also claims that she was prejudiced by not being allowed to use a normal x-ray of an unidentified person as demonstrative evidence during direct examination of her expert Dr. Abrams. She argues that the x-ray was to be used for comparison purposes only, like a tape measure, and was not being offered as evidence or an exhibit.

¶20. Dr. Chouteau avers that the trial court was proper in not allowing the use of an x-ray of a another person because he requested the disclosure of exhibits to be used at trial or offered into evidence through discovery. Duncan listed several items in response to the discovery requests and supplemented her responses. However, she never listed the x-ray.

¶21. Provided proper authentication was had, allowing the x-ray for comparison and explanatory purposes would have been harmless error at best, especially since Dr. Chouteau would have had the opportunity to cross-examine Dr. Abrams. However, it was within the trial judge's discretion to exclude the x-ray. We find no prejudice resulted as Dr. Abrams was still able to explain her position to the jury using Smith's x-ray.

## V. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN LIMITING DUNCAN'S CROSS-EXAMINATION OF DR. CHOUTEAU

¶22. Duncan's attorney began questioning Dr. Chouteau as his first witness, but interrupted that testimony to question Dr. Abrams because she had to return to her job in another state. After questioning Dr. Abrams, he resumed questioning Dr. Chouteau and later cross-examined him again following direct examination of Dr. Chouteau as a witness in his own case. The trial judge told counsel to "move on" twice stating "you had this witness on the stand two and a half hours a day ago. This is a question period based on what he asked in his direct examination. I think you're a little bit out of field." The trial judge again told Duncan's attorney on two other occasions he was outside the scope of his examination.

¶23. "The scope of cross-examination, though ordinarily broad, is within the sound discretion of the trial court and the trial court, possesses inherent power to limit cross-examination to relevant matters." *Smith v. State* 733 So.2d 793, 801 (Miss. 1999) (citing *Pace v. State*, 473 So.2d 167 (Miss. 1985) ; *Dozier v. State*, 257 So.2d 857 (Miss. 1972)). As noted above, the trial transcript shows that most of the limitations with which Duncan brings issue pertain to the scope of questions asked during cross-examination. We find no abuse of discretion in the limitations placed by the trial judge. Therefore this issue is without merit.

## VI. WHETHER THE TRIAL COURT JUDGE SHOWED BIAS TOWARD DUNCAN BY QUESTIONING DR. CHOUTEAU'S EXPERT

¶24. Duncan contends that because the trial judge questioned Dr. Chouteau's expert, Dr. Frederick Carlton, at the closing of her cross-examination, the jury inferred that the court agreed with Dr. Chouteau's position. All parties agree that Smith had an injured aorta. The judge asked Dr. Carlton questions regarding aortagrams, the procedure for repairing the aorta, pertaining to the amount of time it took to prepare and perform said procedure and whether an aortagram could have been performed at RMC. The trial judge concluded by asking all parties if they had any questions based on the questions he asked, and all parties declined. After a recess, the judge came back and explained to the jury, on the record, that he asked questions of Dr. Carlton to gain an understanding of how long it took to do an aortagram since there was testimony that RMC could not perform the procedure.

¶25. This issue was not properly preserved for appeal. Pursuant to Mississippi Rule of Evidence 614(c), objections to the court questioning a witness can be made at the time of the questioning or "at the next available opportunity when the jury is not present." M.R.E. 614(c). Duncan did not make any objection or ask any questions of Dr. Carlton after the judge concluded his questioning. Therefore, this issue is not properly before us. *See Smith v. State*, 724 So. 2d 280, 322 (Miss. 1998). Further, the trial judge has the right to call and question witnesses. This assignment of error is without merit.

## VII. WHETHER THE TRIAL COURT ALLOWED IMPROPER CLOSING ARGUMENTS

### A. DR. CHOUTEAU'S REFERENCE TO SEEKING PUNISHMENT

¶26. Duncan submits that the defendants' closing argument contained prejudicial statements designed to influence the jury. In his closing argument, RMC's attorney stated, "In a case like this, where we've got the loss of a young person . . . pulls at all of our hearts, and it should. The only thing to make that worse is to punish that man and this hospital in an unacceptable way." Duncan's objection to the reference to punishment was sustained, and counsel then rephrased his statement to omit any reference to punishment. Duncan's attorney did not ask the judge to give a limiting instruction to the jury, but took the opportunity in his closing argument to further negate the statement by saying, "we're not here to punish Dr. Chouteau."

¶27. A "trial judge has wide discretion in controlling the remarks and argument of attorneys." *General Motors Acceptance Corp. v. Layton*, 353 So.2d 749, 754 (Miss. 1977). We have also said that the trial judge is in a better position to observe and decide if a remark is improper. *James W. Sessums Timber Co. v. McDaniel*, 635 So.2d 875, 882 (Miss. 1994). Considering that an objection was made and sustained, the statement was rephrased, and counsel took the opportunity to further address the statement during his closing, we find that the trial court did not abuse its discretion and no prejudice was shown.

### B. THE AMOUNT OF TIME OF JURY DELIBERATION

¶28. Duncan also argues that the jury did not deliberate and must have been influenced by emotional factors because it was out less than fifteen minutes before coming to a decision. However, she offered no authority in support of this argument. Consequently, this issue is not properly before us. See *Gerrard*, 619 So.2d at 216; *R.C. Petroleum*, 555 So.2d at 1023. Duncan has an affirmative duty to address the issues she raises and to give authoritative support for her position. *Id.* Failure to do so frees us from addressing the issue.

¶29. Notwithstanding this, our case law is well settled that short deliberations do not automatically evidence bias or prejudice. *See Gray v. State*, 728 So.2d 36 (Miss. 1998) (upholding a seven minute jury verdict); *Smith v. State*, 569 So.2d 1203 (Miss. 1990) (upholding a three minute jury verdict; and *Johnson v. State*, 252 So.2d 221 (Miss. 1971) (upholding ten minute jury verdict). We have held that "[t]here is no yardstick of time which a jury should use before reaching a verdict." *Johnson*, 252 So.2d at 224. Also, we have developed "no formula" for calculating the length jury deliberations should last. *Smith*, 569 So.2d at 1204. For these reasons, we find no error.

### CONCLUSION

¶30. We find that the trial judge did not abuse his discretion in striking the designation of experts and the expert affidavits which led to summary judgment. Further, we find no reversible error and no prejudice in the trial against Dr. Chouteau for medical negligence and against RMC for vicarious liability for Dr. Chouteau. Thus, we affirm the summary judgment in favor of RMC for independent nursing negligence and affirm the judgment entered on the jury verdict in favor of Dr. Chouteau and RMC.

¶31. **AFFIRMED.**

    **PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**