MAXWELL, J.,
for the Court:
¶ 1. The motion for rehearing, filed by Dr. Ken E. Cleveland, is denied. We withdraw our original opinion and substitute this modified opinion.
¶ 2. To prove medical malpractice, a plaintiff must present expert testimony on both the standard of care for the particular specialty of the doctor being sued and the doctor’s deviation from that standard of care. The details of this expert testimony must be disclosed before trial to prevent “trial by ambush” with medical theories the defendant doctor is not prepared to meet.
¶ 3. We are faced with a plaintiffs verdict in a medical-malpractice action against a surgeon and a gastroenterologist (as well as a hospital that was vicariously liable for the gastroenterologist). The malpractice case was supported by the testimony of one expert. While this expert was qualified as an expert in surgery, he was not qualified as an expert in gastroenterology. And at trial, this expert abandoned a previously disclosed opinion, which he admitted was based on incorrect information, and offered a new opinion he had developed just hours before trial.
¶ 4. Based on this expert’s testimony, we find the verdict cannot stand. Because the expert was not qualified to testify about the applicable standard of care for a gas-troenterologist, the plaintiff failed to present a cognizable medical-malpractice claim against gastroenterologist Dr. George T. Smith-Vaniz and, consequently, Jackson HMA Inc. We reverse the judgment against Dr. Smith Vaniz and Jackson HMA and render judgment in their favor.
¶ 5. We also reverse the judgment against surgeon Dr. Ken E. Cleveland. While we find no abuse of discretion in the circuit court’s finding the plaintiffs expert qualified to testify against Dr. Cleveland, the plaintiffs case against Dr. Cleveland was based on a previously undisclosed expert opinion. Thus, we remand the case against him for a new trial.
Facts and Procedural History
¶ 6. Lanell Hamil brought a medical-malpractice suit against Dr. Smith-Vaniz, Dr. Cleveland, and Jackson HMA, alleging the wrongful. death of her husband, Emmett Hamil.[1]

I. Emmett’s Ulcer

¶ 7. Emmett had gone to the emergency room of Central Mississippi Medical Center, a Jackson HMA hospital, for severe abdominal pain. Dr. Smith-Vaniz treated Emmett’s gastrointestinal (GI) bleeding. Dr. Cleveland was called to perform surgery.
¶ 8. When opening Emmett’s abdomen, Dr. Cleveland found a perforated hole, or ulcer, in Emmett’s stomach. Dr. Cleveland performed a wedge resection — cutting out the ulcer and the area around it and then sewing the stomach back together. Emmett stayed in the hospital approximately a week after surgery. According to Dr. Cleveland, because Emmett continued to improve post-surgery, he was discharged from the hospital. But Emmett returned to the hospital early the next morning, experiencing more stomach pain and vomiting blood. A second surgery revealed a second ulcer. This ulcer had eroded a large blood vessel, causing Emmett to die of massive blood loss.

II. Medical-Malpractice Trial

¶ 9. Before trial, Dr. Smith-Vaniz filed a motion in limine to exclude “[a]ny attempts by [Lanell] to solicit expert testimony [that] was not previously designated and *832 provided to Defendants[ ] from any medical expert.” At the motion in limine hearing, Lanell’s attorney assured the court, “We will not be attempting to offer any opinions that have not been previously provided.”
¶ 10. Lanell had previously disclosed the opinion of her sole expert, Dr. Louis Silverman. At the summary-judgment stage, Lanell had submitted Dr. Silver-man’s affidavit. This affidavit tracked La-nell’s unsworn interrogatory responses and expressed the same opinions regarding both doctors’ alleged deviations from the standard of care, “as applied to reasonably prudent, minimally competent surgeons,” and the cause of Emmett’s death. (Emphasis added).
¶ 11. At trial, Lanell tendered — and the circuit court accepted — Dr. Silverman as an expert in thoracic and cardiovascular surgery. Dr. Smith-Vaniz objected to Dr. Silverman’s expert qualifications. He specifically argued that even if Dr. Silverman was familiar with upper GI bleeds through his surgery practice, he was not sufficiently familiar with the specialty of gastroen-terology. The circuit judge clarified that Dr. Silverman was not being tendered as an expert in gastroenterology, to which Lanell’s attorney agreed. The circuit judge overruled Dr. Smith-Vaniz’s objection and held that “Dr. Silverman will be allowed to testify as an expert in the field of thoracic and general surgery.” Dr. Smith-Vaniz then lodged a continuing objection to Dr. Silverman giving any testimony outside of his qualification as an expert in surgery. At the close of Lanell’s case-in-chief, Dr. Smith-Vaniz requested a directed verdict based on insufficient expert testimony, which was denied.
¶ 12. While testifying, Dr. Silverman offered opinions that had not been previously disclosed to the doctors or hospital. He admitted one of his opinions about the deviation from the standard of care — failure to prescribe anti-ulcer medication when Emmett left the hospital — was based on incorrect information. It was not until Dr. Silverman had flown in the day before trial that he learned Emmett’s medical records showed the doctors had indeed prescribed this medication. After learning this, Dr. Silverman developed an alternative theory. Previously, Dr. Silverman had given a sworn affidavit opining that the second ulcer had promptly recurred “post discharge.” But at trial he testified the second, lethal ulcer had instead been “evolving” when Emmett was still at the hospital. According to his new theory, he claimed the ulcer should have been detected based on Emmett’s hemoglobin and hematocrit levels. Dr. Cleveland, joined by the other two defendants, objected to Dr. Silverman’s testimony as outside his designated expert opinion.
¶ 13. At the close of Lanell’s case-in-chief, the circuit court granted Jackson HMA a directed verdict on all claims against it except for vicarious liability for Dr. Smith-Vaniz — meaning it would only be deemed liable if Dr. Smith-Vaniz was found liable. The jury found for Lanell against all three defendants, without apportioning fault among them, and awarded her $500,000 in non-economic damages and $628,050 in economic damages.
¶ 14. All three defendants filed motions for a judgment notwithstanding the verdict or, alternatively, a new trial. After the circuit court denied these motions, they timely appealed.
Discussion
¶ 15. Though the doctors and hospital raise multiple issues on appeal, we find one to be dispositive — Dr. Silver-man’s expert testimony. Expert testimony is critical in a medical-malpractice action. It is necessary to prove both that the defendant physician failed to conform *833 to the required standard of care and that this failure proximately caused the pa-, tient’s injuries. Hubbard v. Wansley, 954 So.2d 951, 955-57 (¶ 12) (Miss.2007).
¶ 16. Indeed, for Lanell to make a prima facie case of medical malpractice— “(1) after [first] establishing the doctor-patient relationship and its attendant duty” — she had to also establish: (2) “the requisite standard of care,” (3) “the defendant physician[’s] failure] to conform to the standard of care,” (4) that the “physician’s noncompliance with the standard of care caused [Emmett’s] injury,” and (5) “the extent of [her and Emmett’s] damages.” Cheeks v. Bio-Med. Applications, Inc., 908 So.2d 117, 120 (¶ 8) (Miss.2005) (citing McCaffrey v. Puckett, 784 So.2d 197, 206 (¶ 33) (Miss.2001)). Again, “[w]hen proving these elements in a medical malpractice suit, expert testimony must be used.” Hubbard, 954 So.2d at 957 (¶ 12). Such expert testimony is required to “identify and articulate the requisite standard that was not complied with” and to “establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Id. (quoting Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992)).
¶ 17. We find Dr. Silverman was not qualified to “identify and articulate the requisite standard” of care that Dr. Smith-Vaniz had to comply with. See id. Without proper expert testimony on the standard of care, Lanell failed to present a prima facie case against Dr. Smith-Vaniz and Jackson HMA. Therefore, Dr. Smith-Vaniz and Jackson HMA are entitled to a judgment rendered in their favor.
¶ 18. However, Dr. Silverman was qualified to testify about the requisite standard of care Dr. Cleveland allegedly failed to conform with, as well as to testify about medical causation — thus establishing a pri-ma facie case against Dr. Cleveland. But Dr. Silverman’s trial testimony differed vastly from the expert opinion Lanell disclosed in her interrogatory responses- and Dr. Silverman’s affidavit. Because of this unfair surprise, Dr. Cleveland is entitled to a new trial.

I. Dr. Smith-Vaniz and Expert Qualification

A. Scope of Dr. Silverman’s Expert Qualification

¶ 19. Mississippi Rule of Evidence 702 governs the admission of expert testimony. “A witness may testify as an expert to ‘assist the trier of fact to understand the evidence or to determine a fact issue’ if the witness is ‘qualified as an expert by knowledge, skill, experience, training, or education[.]’ ” Hubbard, 954 So.2d at 957 (¶ 13) (quoting M.R.E. 702).
¶ 20. Lanell’s attorney tendered Dr. Sil-verman — and the circuit court accepted him as qualified — as an expert in thoracic and cardiovascular surgery. Dr. Silver-man is board certified in general and thoracic surgery and has practiced general and thoracic surgery for three decades. Before practicing, he completed a five-year surgical residency. He is also a fellow of the American College of Surgeons. Based on Dr. Silverman’s knowledge, skill, training, experience, and education, we find the circuit court did not abuse its discretion in accepting him as an expert in surgery. See id. at 956 (¶ 11) (“Absent an abuse of discretion, a [trial] judge’s determination as to the qualifications of an expert witness will remain undisturbed on appeal.”).
¶ 21. But Lanell’s attorney did not tender Dr. Silverman — and the circuit court did not accept him as qualified — as an expert in gastroenterology, the sub-specialty of internal medicine that Dr. Smith-Vaniz practices. Both the Mississippi Supreme Court and this court have held that *834 expert qualification in one specialty does not qualify the expert to testify about the standard of care applicable to another specialty. In Troupe v. McAuley, 955 So.2d 848, 857 (¶ 24) (Miss.2007), the supreme court held that a witness tendered as an expert in neurosurgery was not qualified to testify against a neuro-otolaryngologist. And in Figueroa v. Orleans, 42 So.3d 49, 52-53 (¶¶ 10-13) (Miss.Ct.App.2010), this court held that a witness offered — and accepted — as an expert in gastroenterology was not qualified to testify about standard of care of a surgeon. Here, we have the reverse. Dr. Silverman’s acceptance as an expert in thoracic and cardiovascular surgery did not qualify him to testify against a gastroenterologist.
¶ 22. Further, Dr. Silverman could not have been qualified as an expert in gastroenterology under Rule 702. While he was not required to “be of the same specialty” to testify against Dr. Smith-Vaniz, Dr. Silverman did have to “show satisfactory familiarity with the specialty” of Dr. Smith-Vaniz “in order to testify as to the standard of care [Dr. Smith-Vaniz] owed to [Emmett].” McDonald v. Mem’l Hosp. at Gulfport, 8 So.3d 175, 181 (¶ 15) (Miss.2009) (citing Hubbard, 954 So.2d at 957 (¶ 13)). “It is the scope of the witnesses] knowledge and not the artificial classification by title that should govern the threshold question of admissibility.” Id. And. here Dr. Silverman failed to establish sufficient knowledge of the specialty of gastroenterology.
¶ 23. When Dr. Smith-Vaniz’s counsel questioned Dr. Silverman about his knowledge of gastroenterology, Dr. Silverman testified he is not a gastroenterologist, has “not really” had any gastroenterology training, has not participated in any continuing medical education concerning gas-troenterology, has never performed any gastroenterologist-specific medical procedures, and has never been consulted as a gastroenterologist. In Troupe, the Mississippi Supreme Court looked at a similar lack of knowledge of a specialty and found Rule 702 had not been met. Troupe, 955 So.2d at 857-58 (¶¶ 24-25). There, a neurosurgery expert was not qualified to give an opinion about otolaryngology or neuro-otolaryngology because the expert “had no special training or experience in the field,” “had never conducted middle ear surgery, had never had privileges at any hospital to conduct middle ear surgery,” admittedly “was not qualified to conduct middle ear surgery,” and “did not hold himself out to be an expert in otolaryngology or neuro-otolaryngology.” Id. at 857 (¶ 24).
¶ 24. When pressed by Dr. Smith-Van-iz’s attorney, Dr. Silverman retreated from prior testimony in a separate trial where he admitted he was not familiar with the standard of care applicable to a gastroen-terologist. Instead, here, he claimed he was familiar with the standard of care applicable to “any physician” — and thus, could testify against Dr. Smith-Vaniz. We disagree with this articulation, as the Mississippi Supreme Court has rejected “plain M.D.” standard-of-care testimony. McDonald, 8 So.3d at 182 (¶ 18).
¶ 25. The supreme court has held the proper standard is not whether an expert is qualified to testify about the standard of care of any physician. Rather, it is •whether he or she is qualified to testify about the standard of care of a defendant doctor’s specialty. Id. In McDonald, the trial court ruled — and the supreme court affirmed — that a pathologist was not qualified to testify regarding the standard of care of a gastroenterologist. Similar to Dr. Silverman’s assertion that he would “only comment[] about the overall care provided by a physician other than somebody utilizing those special skills” of a gastroenterologist, the pathologist in Me- *835 Donald, had testified “that he was not really there to offer standard-of-care testimony ‘other than standard of care for a proven practicing physician.’ ” Id. The supreme court found the pathologist had failed to show “that he was competent to testify to the standard of care of a gas-troenterologist.” Id. Our supreme court recognized that “it is illogical to allow a proposed expert to testify as to the standard of care of a specialty with which he has demonstrated no familiarity.” Id. (quoting Hubbard, 954 So.2d at 958 (¶ 17)). Here, we find it equally illogical to allow Dr. Silverman to testify as to the standard of care of a gastroenterologist with which he also has demonstrated no familiarity.
¶ 26. Dr. Silverman claimed he was qualified to testify about subjects where the work of a gastroenterologist “would cross [his] work as a surgeon.” But in Hubbard, the supreme court distinguished between experience with a stibject and familiarity with a speciality. Hubbard, 954 So.2d at 958 (¶ 17). In that case, the supreme court held a neurosurgeon was not qualified to testify against an internal-medicine specialist. Id. While the neurosurgeon was experienced in the subject of treating brain hemorrhages, there was no evidence the neurosurgeon was familiar with the speciality of internal medicine and the standard of care required of an internal-medicine specialist treating a brain hemorrhage. Id. at (¶¶ 17-19). And qualification as a medical expert “requires familiarity not with a particular subject, but with a specialty.” Id. at (¶ 17); see also West v. Sanders Clinic for Women, P.A., 661 So.2d 714, 719 (Miss.1995) (holding the plaintiffs failed to establish that an oncologist was familiar with the standard of care of a gastroenterologist treating colon cancer). We find Dr. Silverman’s experience as a surgeon with the subject of upper GI bleeds is not evidence he was familiar with the specialty of gastroenterology and the standard of care required of a gastroenterologist treating an upper GI bleed.
¶ 27. Thus, the circuit judge’s acceptance of Dr. Silverman as an expert in surgery did not qualify Dr. Silverman to testify about Dr. Smith-Vaniz’s specialty.

B. Lanell’s Failure to Present a Prima Facie Case

¶ 28. Without a qualified expert to testify about the standard of care of a gas-troenterologist and Dr. Smith-Vaniz’s deviation from that standard of care, Lanell was unable to present a prima facie case against Dr. Smith-Vaniz and Jackson HMA. In Troupe, the supreme court found that “[t]he practical effect” of ruling the plaintiffs expert was not qualified to testify against the defendant doctor was that the plaintiff “was undeniably left with the inability to meet her burden of proof in this medical negligence case.” Troupe, 955 So.2d at 858 (¶ 27). The court affirmed a judgment dismissing the plaintiffs claims following a directed verdict for the defendant neuro-otolaryngologist based on the patient’s failure to present a qualified expert witness in neuro-otolaryn-gology. Id. at 859 (¶ 31); see also McDonald, 8 So.3d at 182 (¶ 19) (affirming summary judgment for a gastroenterologist because patient failed to present expert witness qualified in gastroenterology); Hubbard, 954 So.2d at 958 (¶ 19) (affirming summary judgment for an internal-medicine specialist because patient failed to present expert witness qualified in internal medicine). Because Lanell similarly failed to present a qualified expert in gastroen-terology, we find the circuit judge erred by not granting Dr. Smith-Vaniz and Jackson HMA a directed verdict or a judgment notwithstanding the verdict.
*836 ¶ 29. We reverse the judgment against Dr. Smith-Vaniz and Jackson HMA and render judgment in their favor.

II. Dr. Cleveland and Trial by Ambush

A. Requirement to Disclose Changes in Expert Opinions

¶ 30. Lanell was required to identify each person she expected to call as an expert witness at trial. Under Mississippi Rule of Civil Procedure 26(b)(4)(a)(i), she also had “to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.” Our procedural rules also carry twin duties to seasonably supplement responses and amend prior incorrect responses. Rule 26(f)(1)(B) imposes on a disclosing party “a duty seasonably to supplement that party’s response with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony.” M.R.C.P. 26(f)(1)(B). And Rule 26(f)(2)(A) also imposes “a duty seasonably to amend a prior response if that party obtains information upon the basis of which ... the party knows that the response was incorrect when made[.]” M.R.C.P. 26(f)(2)(A).
¶31. The Mississippi Supreme Court recently discussed with disapproval the failure to comply with Rule 26(f). Hyundai Motor Am. v. Applewhite, 53 So.3d 749, 757-59 (¶¶ 30-36) (Miss.2011). “The failure seasonably to supplement or amend a response is a discovery violation that may warrant sanctions, including exclusion of evidence.” Hyundai Motor, 53 So.3d at 758 (¶ 33) (citing Ekornes-Duncan v. Rankin Med. Ctr., 808 So.2d 955, 958 (¶ 10) (Miss.2002)). While “[rjulings ■ on discovery violations will not be overturned absent an abuse of discretion,” id., the supreme court found the trial court had abused its discretion by allowing the plaintiffs expert to testify about undisclosed changes in his opinion. Id. at 759 (¶ 36). As the supreme court emphasized, “We do not condone trial by ambush.” Id.
¶ 32. In Hyundai Motor, the plaintiffs’ accident-reconstruction expert testified “that he had to change several variables because he realized after he had been deposed that he had made some mistakes in his initial analysis.” Id. at 758 (¶ 31). The defendant, Hyundai, moved to strike the expert’s testimony, claiming these changes in calculations were a surprise. “Despite the plaintiffs’ failure to comply with Rule 26(f), the trial court refused to grant Hyundai any relief.” Hyundai Motor, 53 So.3d at 759 (¶ 36). Because “Hyundai was entitled to full and complete disclosure of the plaintiffs’ expert testimony,” and because the plaintiffs failed to formally and timely supplement their disclosed expert testimony, the supreme court reversed the judgment against Hyundai and remanded the case for a new trial. Id. at (¶¶ 36-37).

B. Failure to Supplement Changes to Dr. Silverman’s Testimony

¶ 33. Based on Hyundai Motor, we find the circuit judge abused his discretion when he denied Dr. Cleveland’s motion to strike Dr. Silverman’s testimony based on the failure to supplement and amend discovery responses. The circuit judge should have granted Dr. Cleveland’s motion for a new trial. See id. at 758-59 (¶¶ 34-37).
¶ 34. As in Hyundai Motor, Dr. Cleveland learned for the first time at trial that Lanell’s previous discovery responses were incorrect and incomplete — and Lanell *837 made no attempt to supplement or amend Dr. Silverman’s affidavit.
¶ 35. On the witness stand, Dr. Silver-man withdrew his previous opinion about the failure to prescribe anti-ulcer medication post-discharge because his “initial opinion was based on information that it turned up not to be correct.” Dr. Silver-man testified he did not know “until last night” that his opinion about the ulcer medication was incorrect. He explained that until then, Lanell’s counsel had not provided the portion of Emmett’s medical records showing the appropriate prescription had been given.
¶ 36. Dr. Silverman also conceded his affidavit omitted any discussion about Emmett’s hemoglobin or hematocrit levels as an indication of an “evolving” ulcer. He justified this omission by asserting he “tr[ies] to make those initial statements as general as [he] can.” He suggested that, if Dr. Cleveland had wanted to know his specific opinions and factual bases for them, Dr. Cleveland should have deposed him.
¶ 37. On appeal, Lanell latches onto this suggestion by trying shift her duty to supplement under Rule 26(f) to Dr. Cleveland, arguing he could have ferreted but Dr. Silverman’s true opinion by taking a deposition. But Dr. Cleveland’s unexér-cised right to depose Dr. Silverman does not excuse Lanell’s unfulfilled duty to supplement and amend her expert’s opinion. In Nichols v. Tubb, 609 So.2d 377, 384 (Miss.1992), the plaintiff in a medical-malpractice case did not depose the defendant doctor’s experts “but depended solely upon pretrial interrogatories,” which did not give the substance of or the facts supporting the defendant’s experts’ opinions. The supreme court discussed at some length the particular importance in professional-liability cases that interrogatory responses “addressed to specialized areas of knowledge” disclose “the substance of every fact and every opinion which supports or defends the party’s claim or defense ... and set forth ... meaningful information which will enable the opposing- side to meet it at trial.” Id. Comparing Dr. Silverman’s affidavit to his trial testimony, we find Lanell neither disclosed the substance of his evolving-second-ulcer theory nor provided meaningful information ' about Emmett’s hemoglobin and hematocrit levels to enable Dr. Cleveland’s counsel to meet Dr. Silver-man’s testimony at trial. Cf. Coltharp v. Carnesale, 733 So.2d 780, 786 (¶ 27) (Miss.1999) (holding that an opposing party “cannot be expected to ask the court to compel discovery of a theory unknown to him”).
¶ 38. The unfair surprise here is highlighted by Dr. Cleveland’s failure to object to the admissibility of Dr. Silverman’s testimony based on Daubert[2] and Rule 702.[3] On appeal, Dr. Cleveland argues Dr. Sil-verman’s testimony about Emmett’s hemoglobin and hematocrit levels was scientifically unreliable and, thus, inadmissible. But Dr. Cleveland did not make a contemporaneous Daubert objection at trial. See Hyundai Motor, 53 So.3d at 755 (¶ 19) (holding trial court did not abuse its discretion by denying a motion to strike expert testimony under Daubert and Rule 702 that was not made contemporaneously with the expert’s testimony). Dr. Cleve *838 land claims he was unprepared to make a Daubert objection because he had no notice Dr. Silverman would testify about hemoglobin and hematocrit levels. This is the very scenario our discovery rules were designed to prevent.
¶ 39. “Rules of discovery are to prevent trial by ambush.” Nichols, 609 So.2d at 384. “If a witness changes his testimony in a manner that conflicts with prior discovery responses, the sponsoring party has a duty under Rule 26(f) seasonably and formally to amend or supplement the response.” Hyundai Motor, 53 So.3d at 758 (¶ 34) (citing Choctaw Maid Farms, Inc. v. Hailey, 822 So.2d 911, 916 (¶ 14) (Miss.2002)). Because Lanell’s failure to comply with Rule 26(f) resulted in a trial by ambush, we find Dr. Cleveland is entitled to a new trial.

C. Remedy of New Trial

¶ 40. Dr. Cleveland urges that we render judgment in his favor, as we do with Dr. Smith-Vaniz. He argues that, because Dr. Silverman should not have been permitted to testify about hemoglobin and hematocrit levels due to the discovery violation, we should similarly hold that Dr. Cleveland was entitled to a directed verdict, instead of a new trial. But the judge’s error against Dr. Smith-Vaniz differs from the error committed against Dr. Cleveland. Consequently, so does the proper remedy.
¶ 41. The judgment against Dr. Smith-Vaniz cannot stand because it is not supported by qualified medical expert testimony. And in cases where a plaintiff fails to offer qualified expert testimony — and, thus, fails to present a prima facie case— the supreme court and this court have held that the defendant is entitled to judgment in his favor. E.g., Univ. of Miss. Med. Ctr. v. Lanier, 97 So.3d 1197, 1203 (¶ 22) (Miss.2012) (holding that the trial court erred by not granting a directed verdict based on the plaintiffs failure to produce expert medical testimony on causation “based on a reasonable degree of medical probability”); Worthy v. McNair, 37 So.3d 609, 617-18 (¶ 31) (Miss.2010) (affirming the grant of summary judgment based on the plaintiffs failure to produce an expert who was qualified under Daubert to testify about causation); Buckley v. Singing River Hosp., 99 So.3d 248, 257 (¶¶ 29-30) (Miss.Ct.App.2012) (same).
¶ 42. In contrast, we reverse the judgment against Dr. Cleveland because he was unfairly ambushed through otherwise-qualified medical expert testimony that was not disclosed during discovery. And in cases where the prevailing party blindsides the other party with surprise expert testimony, the supreme court has consistently remedied the unfairness by remanding for a new trial. E.g., Bailey Lumber & Supply Co. v. Robinson, 98 So.3d 986, 998 (¶ 32) (Miss.2012) (reversing and remanding for new trial because plaintiffs expert, though qualified, provided testimony outside his previously disclosed opinion); Hyundai Motor, 53 So.3d at 759 (¶ 37) (reversing and remanding based on plaintiffs failure to supplement expert witness’s testimony); T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 950-51 (Miss.1992) (granting new trial in part because trial court should have never permitted expert to testify because of failure to comply with Rule 26); Jones v. Hatchett, 504 So.2d 198, 202 (Miss.1987) (granting new trial because plaintiffs expert “should not have been allowed to testify” because of the failure to supplement under Rule 26(f)); Square D Co. v. Edwards, 419 So.2d 1327, 1329 (Miss.1982) (reversing and remanding based on plaintiffs failure to supplement expert witness’s testimony).
¶ 43. Following these established precedents, we reverse the judgment against *839 Dr. Cleveland and remand the case for a new trial.
Conclusion
¶ 44. Because the circuit court abused its discretion by permitting Lanell’s expert to offer testimony about the applicable standard of care for Dr. Smith-Vaniz and to offer surprise testimony correcting and changing his previously disclosed opinions, we reverse the judgment against all three defendants. We render judgment in favor of Dr. Smith-Vaniz and Jackson HMA. We remand this case for a new trial against Dr. Cleveland.
¶ 45. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED IN PART AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J, IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON AND FAIR, JJ„ CONCUR. BARNES AND JAMES, JJ., NOT PARTICIPATING.

. Lanell also sued a third doctor, who was dismissed before trial.

. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. In addition to requiring a witness to be qualified as an expert by knowledge, skill, experience, training, or education, Rule 702 requires the expert’s testimony to be (1) "based upon sufficient facts or data” and (2) “the product of reliable principles and methods.” Also, (3) the expert witness must have "applied the principles and methods reliably to the facts of the case.” M.R.E. 702.