## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00042-COA

**WANDA ST. ANDRIE**                                                    **APPELLANT**

**v.**

**SINGING RIVER HEALTH SYSTEM**                                        **APPELLEE**

DATE OF JUDGMENT:              11/24/2020
TRIAL JUDGE:                   HON. JAMES D. BELL
COURT FROM WHICH APPEALED:     JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       NORMAN WILLIAM PAULI JR.
                               RICHARD T. GALLAGHER JR.
ATTORNEYS FOR APPELLEE:        BRETT K. WILLIAMS
                               A. KELLY SESSOMS III
                               JASON R. SCHEIDERER
NATURE OF THE CASE:            CIVIL - MEDICAL MALPRACTICE
DISPOSITION:                   REVERSED AND REMANDED - 09/20/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Wanda St. Andrie alleges that Dr. Terrence Millette, while employed by Singing River Health Systems (SRHS), misdiagnosed her with multiple sclerosis (MS) and improperly caused her to undergo painful, expensive, and unnecessary treatments for a period of several years.  In 2018, St. Andrie filed a medical malpractice lawsuit against Millette and SRHS, alleging that SRHS was vicariously liable for Millette's negligence.  Her suit is one of approximately twenty similar cases filed against Millette and SRHS.  In 2020, St. Andrie filed an amended complaint that added an "independent negligence" claim against SRHS.

St. Andrie's new claim alleges that SRHS had actual or constructive knowledge of Millette's negligence for many years but failed to protect or notify his patients. SRHS filed a motion for summary judgment on St. Andrie's independent negligence claim, arguing that it was barred by the one-year statute of limitations under the Mississippi Tort Claims Act (MTCA). Miss. Code Ann. § 11-46-11(3) (Rev. 2019). The circuit court granted SRHS's motion and certified its order as a final judgment dismissing St. Andrie's independent negligence claim.

¶2. We conclude that St. Andrie's independent negligence claim is not barred by the statute of limitations because it "arose out of the [same] conduct, transaction, or occurrence" as her original complaint and therefore "relates back to the date of [her] original [complaint]." M.R.C.P. 15(c). Accordingly, the circuit court erred by granting SRHS's motion for summary judgment on that claim, and we reverse and remand the case for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3. In 2005, Millette diagnosed St. Andrie with MS and began treating her with MS medications. In 2011, Millette became an employee of SRHS, where he continued to treat St. Andrie for MS. In November 2016, SRHS sent a letter to all of Millette's patients that stated in part,

> Recently, some questions were raised about how Dr. Millette diagnoses and treats patients with [MS]. As a result, we immediately began a review of Dr. Millette's medical activity. During the course of this ongoing review, the decision was made that Dr. Millette would no longer base his practice at [SRHS].

> We recognize that competent medical professionals often have differing opinions, especially when it involves complex neurological conditions. Given

2

the questions that have been raised about Dr. Millette's medical practices, we would like to work with you to obtain a re-evaluation of your diagnosis and treatment plan with another doctor.

Thereafter, SRHS arranged for St. Andrie to see another neurologist, Dr. Laura Minto. In January 2017, Dr. Minto advised St. Andrie that she never had MS.

¶4. In November 2017, St. Andrie served SRHS with a notice of claim under the MTCA. *See* Miss. Code Ann. § 11-46-11(1)-(2). In May 2018, St. Andrie filed a medical malpractice lawsuit against Millette and SRHS in the Jackson County Circuit Court.[1] Her suit is one of approximately twenty similar cases filed against Millette and SRHS. The cases were all assigned to a single judge, and the judge entered a common discovery order that, among other things, permitted counsel for all plaintiffs to participate in any depositions of SRHS executives and administrators.

¶5. In July 2020, St. Andrie filed a motion for leave to file an amended complaint. St. Andrie's original complaint asserted only a vicarious liability claim against SRHS based on

---

[1] The MTCA has a one-year statute of limitations. Miss. Code Ann. § 11-46-11(3). However, "the limitations period for MTCA claims does not begin to run until all the elements of a tort exist, and the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it." *Caves v. Yarbrough*, 991 So. 2d 142, 155 (¶53) (Miss. 2008). In a related case, our Supreme Court held that SRHS's November 2016 letter to Millette's patients did not trigger the one-year statute of limitations because the "letter was insufficient to put [the patient] on notice that she was injured and that Dr. Millette's negligent conduct caused the injury." *McLeod v. Millette*, 301 So. 3d 568, 576 (¶32) (Miss. 2020). In addition, the MTCA's statute of limitations is tolled for ninety-five days after the plaintiff serves her notice of claim on the governmental entity. Miss. Code Ann. § 11-46-11(3)(a). Finally, once the plaintiff receives notice that her claim has been denied or the ninety-five-day tolling period expires, whichever occurs first, an additional ninety days are added to the time remaining in the one-year limitations period. *Id.* § 11-46-11(3)(b); *Page v. Univ. of S. Miss.*, 878 So. 2d 1003, 1006-09 (¶¶12-23) (Miss. 2004).

Millette's negligence, but her proposed amended complaint asserted an "independent negligence" claim against SRHS, alleging that it breached its "duty to exercise reasonable care to safeguard [her] from known or reasonably apprehensible danger," namely, Millette's pattern of repeatedly misdiagnosing patients with MS. The circuit court granted St. Andrie's motion, and she filed her amended complaint.

¶6. In a subsequent motion for summary judgment, SRHS argued, inter alia, that the MTCA's one-year statute of limitations barred St. Andrie's new "independent negligence" claim. SRHS argued that St. Andrie's new claim was barred because she filed her amended complaint after the one-year limitations period had expired and because her new claim did not "relate back" to the date of her original complaint under Mississippi Rule of Civil Procedure 15(c).

¶7. In response, St. Andrie argued that her new claim was timely because she filed her amended complaint within one year of the date on which she discovered or by reasonable diligence should have discovered SRHS's independent negligence. *See generally McLeod*, 301 So. 3d at 572-76 (¶¶15-33) (discussing the MTCA's "discovery rule"). Specifically, St. Andrie argued that she could not have discovered SRHS's independent negligence until her attorney attended the trial in a related case styled *Tingle v. SRHS* in the Jackson County Circuit Court. St. Andrie argued that the evidence presented during the *Tingle* trial revealed that SRHS had possessed actual or constructive knowledge of Millette's negligence for many years but failed to notify his patients. In addition, St. Andrie argued that her new claim was timely because it related back to the date of her original complaint under Rule 15(c).

4

¶8.     The circuit court granted SRHS's motion for summary judgment on St. Andrie's independent negligence claim and directed the entry of a final judgment dismissing that claim. *See* M.R.C.P. 54(b). St. Andrie then filed a motion for reconsideration pursuant to Mississippi Rule of Civil Procedure 59(e), which the circuit court denied. The court reasoned that St. Andrie's independent negligence claim did not relate back to the date of her original complaint because "the new claim has legal and proof requirements separate and apart from the original complaint." The court also concluded that St. Andrie should have discovered her new claim prior to the *Tingle* trial. The court explained that the evidence presented during the *Tingle* trial was "developed in common discovery," and St. Andrie was "permitted to participate in common discovery." The court reasoned that St. Andrie should have discovered the basis for her claim during common discovery, but "St. Andrie's counsel chose not to participate in common discovery." St. Andrie then filed a notice of appeal.

**ANALYSIS**

¶9.     We review the grant of summary judgment de novo. *Forbes v. Gen. Motors Corp.*, 993 So. 2d 822, 824 (¶7) (Miss. 2008). We also review issues of law de novo, "including issues concerning statutes of limitations." *Id.* Whether an amended complaint relates back to the original complaint under Rule 15(c) is also a question of law that we review de novo. *Ralph Walker Inc. v. Gallagher*, 926 So. 2d 890, 897 (¶11) (Miss. 2006).

¶10.    St. Andrie makes two arguments as to why her independent negligence claim is not barred by the statute of limitations. First, she argues that her claim relates back to the date of her original complaint under Rule 15(c). Second, she argues that she did not discover, and

could not have discovered with reasonable diligence, SRHS's independent negligence until her attorney attended the *Tingle* trial. For the reasons explained below, we conclude that St. Andrie's independent negligence claim is not barred by the statute of limitations because it relates back to the date of her original complaint. Therefore, the circuit court erred by granting SRHS's motion for summary judgment on that claim. Because that issue is dispositive, we need not address St. Andrie's second argument.

¶11. Under Mississippi Rule of Civil Procedure 15(c)(1), "[w]henever [a] claim . . . asserted in [an] amended [complaint] arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original [complaint], the amendment relates back to the date of the original [complaint]." M.R.C.P. 15(c)(1). To determine whether an amendment relates back to the original complaint, we will also consider "whether the opposing party has been put on notice regarding the claim . . . raised by the amended pleading." *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 731 (Miss. 1989) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497, at 495 (1971)). But with respect to the issue of notice, "[t]he rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitation were intended to provide." *Id.* (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984)).

¶12. Here, the relevant question is whether St. Andrie's "independent negligence" claim against SRHS relates back to the date of her original complaint, which asserted a claim against SRHS based on vicarious liability—i.e., that SRHS was liable for the negligence of

6

its employee, Millette. St. Andrie's original complaint alleged that Millette had misdiagnosed her with MS and prescribed an inappropriate course of treatment for many years, including five years while he was employed at SRHS. St. Andrie alleged that SRHS was liable for Millette's negligence because Millette was an employee of SRHS acting within the course and scope of his employment. In her amended complaint, St. Andrie alleged that SRHS also was liable due to its own "independent negligence." Specifically, she alleged that SRHS "had actual or constructive knowledge of Dr. Millette's pattern of repeated misdiagnosis of patients with [MS] . . . for many years." She alleged that SRHS failed to exercise reasonable care for her safety by failing to notify her of Millette's negligence.

¶13. In holding that St. Andrie's independent negligence claim did not relate back to the date of her original complaint, the circuit court relied on this Court's decision in *Russell v. Ford Motor Co.*, 960 So. 2d 495 (Miss. Ct. App. 2006). In *Russell*, two men (Wilson and Hayes) died in a car crash after the airbags in their Ford Tauras failed to deploy. *Id.* at 496-97 (¶1). A post-accident inspection showed that the car had no driver's side airbag and that the passenger's side airbag was detached and inoperable. *Id.* at 497 (¶1). Several years earlier, the car's prior owner (Chestnutt) failed to have the airbags reinstalled after they had deployed in an accident. *Id.* at (¶2). Chestnutt later fell behind on her car payments, and Ford Motor Credit Company (FMCC) repossessed the car. *Id.* FMCC transferred the car to Ford Motor Company (Ford) for sale at auction, and although the car's records showed that its airbags had deployed previously, Ford made no repairs to it. *Id.* at (¶3). A used car dealer bought the car at auction and resold it to Wilson. *Id.* at (¶4). After Wilson and Hayes's fatal

7

crash, their wrongful death beneficiaries sued Ford and "sought to hold Ford liable only for its conduct prior to the sale of the car." *Id.* at (¶5). They alleged that Ford was liable for defectively designing the car's brakes and steering system, for not equipping the car with a warning system to alert drivers to malfunctions in the airbag system, and for misrepresenting that the car was equipped with functioning airbags. *Id.* at 498 (¶5). More than two years later—and one day after the statute of limitations had run—the plaintiffs moved to amend their complaints to allege that Ford negligently failed to inspect and repair the car after it was repossessed from Chestnut and prior to its resale at auction. *Id.* at (¶9). The circuit court denied leave to amend, reasoning that the plaintiffs' original claims against Ford "only concern[ed] the alleged condition of the subject Taurus at the time it originally left Ford's control and was sold in October of 1996," but their "proposed second amended complaint [sought] to hold Ford liable for negligence as to the treatment and sale of the subject Taurus at the [a]uction in June of 2001." *Id.* at 498-99 (¶10).

¶14. On appeal in *Russell*, this Court affirmed the circuit court's ruling. *Id.* at 501 (¶18). This Court concluded,

> The "conduct, transaction or occurrence" that gave rise to Russell's original claims against Ford was the designing and manufacturing of the 1996 Taurus, as well as the representations Ford made to the general public regarding the quality and safety of the vehicle. On the other hand, the "conduct, transaction or occurrence" that forms the basis of Russell's proposed amendments was the failure of Ford's area manager . . . to inspect and repair the vehicle, as well as his failure to adequately warn the buying public about the inoperable airbags. *These events are completely separate and distinct and, therefore, give rise to separate and distinct causes of action.*

*Id.* (emphasis added) (quoting M.R.C.P. 15(c)(1)).

8

¶15.   *Russell* is materially distinguishable from the present case. In *Russell*, the plaintiffs'

original complaint "sought to hold Ford liable only for its conduct prior to the sale of the car"

in 1996, alleging that Ford defectively designed the car and misled "the general public

regarding the quality and safety of the vehicle." *Id.* at 497, 501 (¶¶5, 18). In contrast, their

proposed amendments sought to hold Ford liable for its local area manager's failure to

inspect and repair the car *five years later*—after it had been wrecked once and repossessed.

*Id.* at 498-99, 501 (¶¶9-10, 18). Not surprisingly, this Court concluded that the proposed

amendments involved a "completely separate and distinct" "'conduct, transaction, or

occurrence.'" *Id.* at 518 (¶18) (quoting M.R.C.P. 15(c)(1)).

¶16.   But in this case, St. Andrie's proposed amendment involves the same conduct,

transaction, or occurrence as her original complaint. St. Andrie original complaint alleged

that SRHS was liable because its employee, Millette, "repeatedly misdiagnosed . . . St.

Andrie with multiple sclerosis" and negligently prescribed her "several very powerful and

costly medications." St. Andrie alleged that these actions occurred during Millette's

employment at SRHS, beginning in 2011 and continuing until 2016. In her proposed

amended complaint, St. Andrie sought only to add a claim that—*during the same time

period*—SRHS had actual or constructive knowledge of Millette's negligence but failed to

timely notify St. Andrie. As alleged in the proposed amended complaint, Millette's ongoing

negligence and the hospital's allegedly concurrent failure to protect Millette's patients are

all part of the same "conduct, transaction, or occurrence." M.R.C.P. 15(c)(1). Accordingly,

we conclude that the proposed amended complaint "relates back" to the date of the original

complaint under Rule 15(c)(1).

¶17.    Courts applying Federal Rule of Civil Procedure 15(c)(1)[2] have reached similar conclusions.  In *Estate of Goldberg ex rel. Goldberg v. Nimoityn*, No. 14-980, 2014 WL 6908013 (E.D. Pa. Dec. 9, 2014), the plaintiff's first amended complaint alleged that his mother died because doctors negligently or intentionally failed to place a feeding tube in his mother to provide nutrition during her hospitalization.  *Id.* at *1, *4.  The plaintiff's first amended complaint named two doctors and the hospital as defendants.  *Id.* at *4.  The first amended complaint "asserted only a theory of vicarious liability against the [h]ospital" based on the allegation that the doctors were acting within the course and scope of their employment with the hospital.  *Id.* at *4, *9.  The plaintiff's second amended complaint "added additional claims that the [h]ospital was directly negligent in hiring and granting privileges to the [doctors] and conspired with [the doctors] . . . ."  *Id.* at *9.  The district court held that the new "claim of direct corporate negligence against the hospital" related back to the date of the amended complaint under Rule 15(c)(1) because it "[u]ndisputedly" "ar[ose] out of the same conduct and occurrences described in the original pleadings."  *Id.*

¶18.    In *Banks v. St. Mary's Hospital & Medical Center*, 558 F. Supp. 1334 (D. Colo. 1983), the plaintiffs filed a complaint alleging that three doctors' negligence caused the death of the decedent.  *Id.* at 1335-36.  The complaint also alleged that the hospital was vicariously liable for the doctors' negligence.  *Id.* at 1336, 1338.  The plaintiffs subsequently moved to

---

[2] Mississippi Rule of Civil Procedure 15(c)(1) tracks Federal Rule of Civil Procedure 15(c)(1) in relevant part, and our Supreme Court has looked to interpretations of the federal rule for guidance.  *Parker*, 555 So. 2d at 731.

amend their complaint to add two new claims against the hospital: "negligent failure properly to supervise and control the information, diagnosis and treatment given to decedent, and negligent and careless design, conduct and administration of the hospital training program under which the defendant doctors worked." *Id.* at 1336. The hospital argued that the two new claims did not relate back to the original complaint and were barred by the statute of limitations because they "constitute[d] new causes of action . . . based on separate operational facts distinct from those of the original complaint." *Id.* In response, the plaintiffs argued that the new "claims ar[ose] out of the same occurrence—the death of [the decedent]—and the same conduct—the negligent care provided to [the decedent]—as was alleged in the original complaint . . . ." *Id.* The district court agreed with the plaintiffs and held that the new claims arose out of the same conduct, transaction, or occurrence as the original vicarious liability claims. *Id.* at 1338.

¶19. Likewise, in this case, SRHS's alleged failure to protect St. Andrie from Millette's negligence "arose out of the [same] conduct, transaction, or occurrence" as Millette's negligence. M.R.C.P. 15(c)(1). Therefore, St. Andrie's independent negligence claim relates back to the date of the original complaint under Rule 15(c)(1) and is not barred by the statute of limitations. Accordingly, the circuit court erred by granting SRHS's motion for summary judgment on that claim.

¶20. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY AND SMITH, JJ., CONCUR. GREENLEE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED BY EMFINGER, J.; McDONALD AND McCARTY, JJ., JOIN IN PART. LAWRENCE, J., NOT PARTICIPATING.**

11

**GREENLEE, J., CONCURRING IN RESULT ONLY:**

¶21.   I concur that the order granting partial summary judgment must be reversed, but I would reverse for different reasons than the majority.  I would affirm the circuit court's ruling that St. Andrie's independent negligence claim did not relate back to the original complaint, but I would reverse the circuit court's judgment that the claim was barred by the statute of limitations and remand for further proceedings.

## I.      The Relation-Back Doctrine

¶22.   Under Mississippi Rule of Civil Procedure 15(c)(1), "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."  M.R.C.P. 15(c)(1).  "In other words, an amendment relates back to the time of the filing of the original pleading and suspends the running of the statute of limitations against the amendment, so long as the amendment does not create a new cause of action."  *Russell v. Ford Motor Co.*, 960 So. 2d 495, 500 (¶17) (Miss. Ct. App. 2006).  "[T]he courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading."  *Id*. at 501 (¶17) (quoting *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 731 (Miss. 1989)).

¶23.   In *Russell*, this Court found that "[t]he trial court . . . did not abuse its discretion in holding that Russell's proposed amendments did not qualify under Rule 15(c)."  *Id*. at 500 (¶17).  This Court noted that "[t]he 'conduct, transaction or occurrence' that gave rise to Russell's original claims against Ford was the designing and manufacturing of the 1996

Taurus, as well as the representations Ford made to the general public regarding the quality and safety of the vehicle." *Id*. at 501 (¶18). However, "the 'conduct, transaction or occurrence' that form[ed] the basis of Russell's proposed amendments was the failure of Ford's area manager . . . to inspect and repair the vehicle, as well as his failure to adequately warn the buying public about the inoperable airbags." *Id*. We held that "[t]hese events are completely separate and distinct and, therefore, give rise to separate and distinct causes of action." *Id*.

¶24. Similarly, the "conduct, transaction, or occurrence" that gave rise to St. Andrie's original claims was the negligence or gross negligence of Millette in misdiagnosing his patients and SRHS's vicarious liability. However, the "conduct, transaction, or occurrence" that gave rise to St. Andrie's amended claim was the failure of SRHS employees to protect and warn her of Millette's alleged negligence.

¶25. To prove Millette was medically negligent, St. Andrie had to show:

> (1) [Millette] had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) [Millette] failed to conform to that required standard; (3) [Millette's] breach of duty was a proximate cause of [St. Andrie's] injury, and; (4) [St. Andrie] was injured as a result.

*McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 180 (¶12) (Miss. 2009) (quoting *Delta Reg'l Med. Ctr. v. Venton*, 964 So. 2d 500, 504 (¶8) (Miss. 2007)). Additionally, to prove SRHS was vicariously liable, St. Andrie had to show that Millette was medically negligent while working as an employee of SRHS. *See Children's Med. Group P.A. v. Phillips*, 940 So. 2d 931, 935 (¶13) (Miss. 2006) ("Under the doctrine of respondeat superior, the master

13

is liable for the acts of his servant which are done in the course of his employment and in furtherance of the master's business."). However, as the circuit court noted, to prove that SRHS was negligent for the alleged failure to protect or warn, St. Andrie had to show that SRHS had actual or constructive knowledge of Millette's negligence. The amended complaint does more than merely add a new fact as St. Andrie suggests. Rather, it adds an entirely new claim. As the circuit court stated in its bench ruling, "independent negligence . . . is a separate . . . claim from a claim of vicarious liability. . . . [It] relies upon a separate set of facts . . . , separate witnesses, separate evidence, and would be another issue . . . to be tried during this trial, if this case goes to trial. Therefore it does not fit Rule 15(c) concerning relation back of amendments." For these reasons, I believe that the independent negligence claim did not relate back to the original complaint, and I would affirm the circuit court's ruling to that extent.

## II. Statute of Limitations

¶26. As to the statute-of-limitations issue, I would reverse the circuit court's judgment that the independent negligence claim was barred by the statute of limitations and remand for further proceedings. There is clearly a dispute as to when St. Andrie learned of her claim, and it is unclear from the circuit court's ruling when it found that the limitations period began to run. It is unclear if the court's ruling was based on when St. Andrie should have discovered, with reasonable diligence, a May 2016 letter from three doctors to SRHS administration or if it was based on certain testimony that was presented during the *Tingle* trial—a companion case.

14

¶27. The May 2016 letter[3] read in conjunction with the November 2016 letter—explaining that some questions recently had been raised about how Millette diagnosed and treated patients with multiple sclerosis, that SRHS immediately began a review, and that Millette would no longer practice at SRHS—could not have not put St. Andrie on notice of her independent negligence claim against SRHS.

¶28. According to St. Andrie, during the *Tingle* trial on July 1, 2020, Dr. Roth, the chief medical officer for SRHS, testified that SRHS knew about concerns involving Millette but did not investigate them until SRHS received something in writing. Later, St. Andrie's attorney admitted that he did not request discovery, participate in common depositions, or

---

[3] The May 2016 letter stated:

> The purpose of this communication is to express our concern regarding a pattern of diagnosis and/or treatment that may be inappropriate. While we acknowledge that medicine, and especially neurology, is oftentimes an inexact science, our concern goes beyond diagnostic error or uncertainty that we feel would be expected in the routine practice of medicine/neurology. We further recognize that practice approaches to diagnoses and treatment may differ between individuals or practices. **Thus, this communication does not serve to accuse any individual of wrongdoing,** nor are we asking or requesting any particular action in regards to these concerns. Our goal is to insure appropriate neurologic care and maintain the institutional integrity of Singing River Health System.
>
> Please find attached a list that represents a sampling of patient medical record numbers. The list includes patients that have been brought to our attention in a variety of ways. We recognize that as employees of Singing River Health System, we are not in a position to make any judgment or take any action in these matters beyond presenting and reporting our concerns. If it is determined that an internal mechanism does not exist to address this matter, please communicate this decision in writing.

(Emphasis added).

15

read emails regarding companion cases. St. Andrie's attorney also admitted that

> if they took the deposition of Dr. Roth, whose testimony I heard in the courtroom, had been taken in a deposition and his testimony was consistent with what he said in the courtroom, then I would have had . . . an opportunity to have heard it in a deposition format. But . . . I didn't attend those depositions.

However, it is unclear from the record whether St. Andrie could have discovered the information that came to light during Dr. Roth's testimony at any point before the *Tingle* trial. The record indicates that Dr. Roth was scheduled to be deposed between August 5 and 7, 2019. However, we do not know if he was in fact deposed or when. Additionally, the record does not appear to contain any other information suggesting that SRHS knew about Millette's alleged negligence for years, as St. Andrie suggests. Accordingly, I would reverse the partial grant of summary judgment on this reasoning and remand for further proceedings.

**EMFINGER, J., JOINS THIS OPINION. McDONALD AND McCARTY, JJ., JOIN THIS OPINION IN PART.**

16